AMERICAN BROADCASTING COMPANIES, INC., AMERICAN BROADCASTING COMPANY, DIVISION OF AMERICAN BROADCASTING COMPANIES, INC. AND ABC NEWS, INC. *v.* SMITH CABINET MANUFACTURING COMPANY, INC., EVANSVILLE TELEVISION, INC.

[No. 1-1273A219. Filed June 12, 1974. Rehearing denied July 12, 1974. Transfer denied September 13, 1974.]

*Thomas M. Scanlon,* of Indianapolis, *Thomas R. Haley,* of Seymour, *Barnes, Hickam, Pantzer & Boyd,* of counsel, of Indianapolis, for appellants.

*James E. Hawes, Jr., Jerome M. Strauss, Charles J. Todd, Ice Miller Donadio & Ryan,* of Indianapolis, *Richard H. Montgomery, Montgomery Elsner & Pardieck,* of Seymour, for appellee.

LOWDERMILK, J.—Smith Cabinet Manufacturing Company, Inc., plaintiff-appellee herein, is engaged in the business of manufacturing furniture, including in its products a baby crib made chiefly of polystyrene plastic.

American Broadcasting Companies, Inc., American Broadcasting Company, Division of American Broadcasting Com-

panies, Inc., and ABC News, Inc., defendants-appellants herein, are national television and radio broadcasting companies which have various affiliates, including a local television station at Evansville, Indiana, which receives much of its program material from the defendants-appellants' network, hereinafter referred to collectively as "ABC."

ABC engaged in the preparation of a special documentary some months before the commencement of the within action which documentary was entitled "ABC News Close-up—On Fire!" Included in the material prepared for the program was a film segment which depicted a human hand holding a lighted match against the bottom rail of one of plaintiff's model cribs, the type of which plaintiff was manufacturing and delivering for sale by retailers throughout the United States, and which rail caught fire within ten seconds and the entire bed, without furnishings, burned within approximately ten minutes.

ABC, by the usual methods of the industry, sought to obtain publicity for its planned program, which had been scheduled as a documentary for telecast by ABC on November 26, 1973. Such publicity was obtained by a showing of the documentary to the press in order to obtain reviews and the distribution of various advertising materials.

Plaintiff-appellee commenced this action upon learning of the planned documentary, seeking damages for claimed loss of sales and an injunction against the showing of the film segment concerning its crib. The plaintiff alleged that the documentary was inaccurate in that it condensed a ten minute test into a period of forty seconds, which made the burning of the crib appear more rapid than it was in fact and that the test was not run under sufficiently realistic conditions, since the crib did not contain a mattress or bedclothing.

The action was filed in the trial court on Wednesday, November 21, 1973, and notice was ordered issued and served on defendants-appellants for hearing on November 23, 1973, which was the day following Thanksgiving. The hearing was

to determine whether the proposed national telecast of the documentary film on the following Monday evening was false and libelous and should, as to such portions, be enjoined.

Trial was commenced on Friday, November 23rd, and completed late the following day.

The trial court ordered a viewing of the specific films in question, including a film made by Professor Williamson of the University of California at Berkeley, who made the test on plaintiff-appellee's baby bed. The court also viewed a film clip used in the advertising and promotion of the ABC special. The trial judge, in his honest endeavor to be correct in his handling of the case, before concluding the hearing requested a second viewing of the forty second segment of the film relating to Smith Cabinet's product (baby bed.)

The trial judge took the case under advisement until the following Monday in order to study and to examine all the authorities cited by the parties. Upon reconvening, the court issued a considered and clearly drafted preliminary injunction which was directed only to those matters and films that had been personally viewed by the court and had been previously published by ABC.

Following the entry of judgment and the fixing of a preliminary injunction bond ABC filed its bond in the required amount, which bond was approved by the court. On December 3, 1973, ABC filed its praecipe for a record of the proceedings.

ABC's only assigned error is that the court erred in entering the interlocutory order granting a preliminary injunction in favor of plaintiff-appellee and against ABC.

ABC earnestly contends that the injunction issued constituted a prior restraint order and censorship in violation of the First and Fourteenth Amendments to the United States Constitution.

It is self evident from a reading of the court's preliminary injunction that it is in the alternative and will permit ABC

to run the news documentary on the condition that the forty second segment showing the burning of the plaintiff-appellee's baby bed have inserted written notices in the video portion designating the elapsed time sequence of the fire test of their product and edit the documentary by eliminating any reference to the plaintiff or its product by name until a more thorough and comparative testing and documentation is conducted and until further order of the trial court. The second alternative provided that if ABC was unwilling to edit the documentary as ordered by the court then ABC was prohibited from showing the documentary if it included the segment in question.

Plaintiff-appellee urges that the trial court did not abuse its discretion in issuing a preliminary injunction and therefore the same should not be reversed except upon the clear showing of an abuse of discretion. *Hickey* v. *Hickey* (1973), 156 Ind. App. 610, 298 N.E.2d 29, 33.

Appellee's position is that the order of the trial court fulfills all constitutional requirements in the First Amendment area. Appellee contends that the standard to be used is set out in the case of *Rosenbloom* v. *Metromedia* (1970), 403 U.S. 29, 29 L.Ed.2d 296, wherein our Supreme Court stated that the First Amendment does not apply to state libel actions where there is no issue of general or public interest. The reliance on *Rosenbloom* is dependent on a finding by this court that the segment in question is not a matter of public interest.

The standard which is applied in *Rosenbloom* was first set out in the case of *New York Times Co.* v. *Sullivan* (1964), 376 U.S. 254, 11 L.Ed.2d 686, wherein the Supreme Court held that damages could not be recovered in a libel action involving public officials (also matters of public interest, *Rosenbloom, supra*) unless actual malice was shown to exist. The finding of actual malice can be made if it is found that the statement in question is knowingly false or was made in a reckless disregard for the truth or falsity. In the case at bar the trial court found that the film segment in question

was knowingly false and misleading. Therefore, appellee argues that actual malice has been found.

It is the position of appellee that once a publication falls under the tests set out above in *New York Times* and *Rosenbloom, supra,* that the republication of such a statement can be properly enjoined since that statement is not constitutionally protected by the First Amendment.

Appellee also contends that the First Amendment does not prohibit all restraints on publications. In the landmark case of *Near* v. *Minnesota* (1931), 283 U.S. 697, 75 L.Ed. 1357, certain areas were set out where the press will not be immune from prior restraints, such areas being war related information, obscene material, and statements which in and of themselves provoke violence. See, also, *Chaplinsky* v. *New Hampshire* (1941), 315 U.S. 568, 86 L.Ed. 1031.

Certain injunctions are permitted in the area of a business libel. Appellee cites several cases where injunctions have been permitted. However, these cases generally deal with business competitors or private individauls who are engaged in a strictly private or personal conflict. The cases cited by appellee also find that the remedy available at law to the plaintiff is inadequate. The gravaman of these cases is that the publication is the result of a conspiracy wherein coercion or intimidation are present. In the case of *Martin* v. *Reynolds Metals Company* (1963), 224 F. Supp. 978, 985, an individual put up a libelous sign affecting a neighboring property owner. The plaintiff in that case obtained an injunction which required that the sign be removed. The injunction was upheld. However, the court on appeal found that there was no public issue involved in that case. The court stated as follows:

> "The Supreme Court has held that the Constitution does not protect publications which are lewd, obscene, profane, or *merely libelous* from injunction. . . . however, where the publication is about something which is of public interest, then the party libeled must turn to law for his

relief. . . ." (Their emphasis.)  See, also, *Maytag Co.* v. *Meadows Mfg. Co.* (7th Cir., 1929), 35 F. 2d 403.

It is our opinion that the position of appellee cannot be sustained. The test set out by appellee regarding the punishment involved for the publication of libel *(Rosenbloom, supra)* applies after the publication has been made. None of the cases relied upon by appellee stand for the proposition that the statements would be subject to a prior restraint. It would seem that the argument propounded by appellee is that if a statement can be found to be libelous under *Rosenbloom* then publication of said statement can be enjoined. It is our opinion that this reasoning is incorrect

In the case of *Pittsburgh Press Co.* v. *The Pittsburgh Commission on Human Relations, et al.* (1973), 37 L. Ed. 2d 669, 679, 680, our Supreme Court held as follows:

". . . The special vice of a prior restraint is that communication will be suppressed, either directly or by inducing excessive caution in the speaker, before an adequate determination that it is unprotected by the First Amendment."

In that case no interim relief (injunction) had been granted to restrain publication. A final determination that the statements in question were not constitutionally protected was made before any prior restraints were established. The Supreme Court reaffirmed its position that free expression of views on matters of public interest cannot be enjoined.

The leading case in the First Amendment area as it relates to prior restraints is *Near* v. *Minnesota, supra.* In *Near,* a defendant had been enjoined from maintaining a newspaper publication which was found to be a nuisance. The court found that the publication was malicious, scandalous, and defamatory. The statute which permitted an injunction to be issued was found to be unconstitutional because it permitted a prior restraint of free speech which is protected by the First Amendment. The Supreme Court found that freedom of speech and of the press was not an absolute right. The

court stated that remedies for libel were available if an abuse of the First Amendment right of free speech was found. The court found that freedom of the press was basic to our system of government.

In *Near* the court discussed the matter of an abuse of the liberty afforded by the First Amendment to the press and found that when such abuse resulted in injury and when speech which is not protected by the First Amendment is abused, then an action at common law for libel would be available. The court found that when a wrong was committed by a publication that the state affords both public and private redress. Our Supreme Court recognized the exceptions discussed above where prior restraints are available but stated that the general concept of freedom of the press enjoys a nearly exclusive immunity from previous restraint. Previous restraints were found to be the essence of censorship.

One of the basic principles in the area of prior restraint was firmly established in *Near* as follows:

". . . The preliminary freedom extends as well to the false as to the true; the subsequent punishment may extend as well to the true as to the false. . . ."

Thus, it is obvious that the truth or falsity of the television segment in question can be of no consequence in making a decision as to whether a prior restraint is permissible. In other words, an injunction is not permitted simply because the publication will be false. It must be remembered that in *Near, supra,* the publication was found to be malicious, scandalous, and defamatory, but an injunction was still held to be improper.

In a case of similar nature to the one at bar our Supreme Court found that an injunction is not the proper medium to redress an alleged private wrong in the area of free speech. In *Organization for a Better Austin* v. *Keefe* (1971), 402 U.S. 415, a realtor was the sub-

ject of leaflets which were distributed by the organization. The leaflets accused the realtor of discrimination and called him a "panic peddler." These leaflets were generally distributed over a wide area, with particular attention being afforded the neighbors of the realtor. An injunction was issued, enjoining the organization from distributing said leaflets. Our Supreme Court, in discussing when an injunction is permissible, stated as follows:

> "Any prior restraint on expression comes to this Court with a 'heavy presumption' against its constitutional validity. . . . Respondent thus carries a heavy burden of showing justification for the imposition of such a restraint. He has not met that burden. *No prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices in pamphlets or leaflets warrants use of the injunctive power of a court. . . ."* (Our emphasis.)

Although the court was specifically dealing with a claim of invasion of privacy, the basis for its decision was *Near, supra.*

Our Supreme Court reaffirmed the elementary principle that the issue of the truth or validity of the publication is of no consequence in a case of this type.

In the case of *Krebiozen Research Foundation* v. *Beacon Press* (1956), 334 Mass. 86, 134 N.E.2d 1, 6, 7, a suit was brought to enjoin the publishing of a book which had unfavorable comment with regard to a drug allegedly useful in cancer treatment. The Supreme Court of Massachusetts held that the First Amendment guaranteeing freedom of speech and freedom of the press precluded injunction. There are many similarities between *Krebiozen* and the case at bar. In *Krebiozen* galley proofs of the book had already been published and distributed, just as in the case at bar a preview showing of the television segment had been conducted. In *Krebiozen* there was an allegation of insufficient testing as well as allegations of knowingly false, fraudulent, wrongful, and malicious statements. There was also an allegation that

the plaintiffs would suffer irreparable injury to their professions and business and that their remedy at law was inadequate. The court found that the matter involving the research on the alleged cancer drug was a matter of public interest. The Massachusetts court reaffirmed the principle that the constitutional rights of free speech in a matter of public interest made injunctive relief almost totally inappropriate.

The court stated its views on the propriety of the injunction as follows:

"The plaintiffs urge that there is no protection for dissemination of what is admittedly false and they stress the rule that, to test the bill, the demurrer in a sense admits its allegations. The plaintiffs ask, 'Is an attack on efficacy and existence of a drug, the therapeutic merits of which are still under investigation * * * of such overriding public interest that the * * * [plaintiffs] should be powerless to stop defamatory statements concerning themselves and the drug?' We think the answer is 'Yes.'"

The court found that although the attacks on the drug might be unjustified the matter was of sufficient public interest to require that all discussion of the drug be allowed so that a wise decision could be made based upon all views. The court found that it is for the people to decide whether statements were true or false.

The court discussed the function of prior restraint and held that such prior restraint is not appropriate in the majority of cases for the following reasons:

"'. . . If the judge could suppress the whole publication because of his opinion about a few items, he would be a sort of censor. One man's judgment is not to be trusted to determine what people can read. * * * So our law thinks it better to let the defamed plaintiff take his damages for what they are worth than to intrust a single judge (or even a jury) with the power to put a sharp check on the spread of possible truth.'"

It is our opinion that the television segment in question was a matter of public interest. The evidence heard by the

trial court disclosed that approximately 25,000 cribs similar to the one involved in the test were on the public market to be sold. Additionally, the evidence disclosed that the United States had more deaths by fire per capita than any country in the world. Thus, it can hardly be contended that a television documentary dealing with the causes of home fires is not a matter of public interest. Likewise, we can see no dispute to the conclusion that the television segment in question dealing with the combustability of a baby crib was a matter of great public interest.

Appellee has contended that the First Amendment guarantees did not apply to the broadcasting industry in the same manner as they do to other media. In the case of *Robinson* v. *American Broadcasting Companies* (1971), 441 F.2d 1396, 1399, the United States Court of Appeals, Sixth Circuit, held as follows:

> "We are in complete accord with the proposition that broadcasting is subject to different First Amendment standards as compared to the standards applied to a public speaker or the publisher of a magazine or newspaper. . . ."

Notwithstanding the above quotation the court went on to hold that the broadcasting media still is entitled to the majority of the First Amendment guarantees.

In *Robinson* a group of tobacco growers sought to enjoin the broadcasting of certain messages on the television which stated directly, indirectly, or by innuendo that cigarettes would kill the people who smoked them. The court held that the injunction would not lie because it would be barred by the First Amendment as an impermissible prior restraint. The statements had already been published and the complaint sought to enjoin any republication. The complaint also alleged that the statements were false, that the plaintiffs would suffer irreparable injury, and that the plaintiffs' remedy at law was inadequate.

The court found that it was immaterial whether the statements in question were true or false. The court found that the

statements were matters of public interest and were thus protected by the First Amendment from any prior restraint.

Thus, while broadcasting is subject to certain specified controls the basic concept of freedom of speech and freedom of the press apply nonetheless to the broadcasting industry.

The cases cited above firmly establish that a prior restraint is not permissible for either a publication or a republication of a statement of public interest. See *Robinson, supra,* and *Krebiozen, supra.* The exception which allows an injunction for certain types of trade libel is of no concern in the case at bar as the trial court in its findings found no evidence of conspiracy, coercion, or intimidation by ABC.

The contentions of appellee are based primarily on tests which are used in cases of libel. In the case at bar we are not concerned with legal tests which would be pertinent to a libel action since said action is only invoked after a publication has been made. As we have heretofore stated, a prior restraint is rarely permitted under the First Amendment. It is our opinion that the case at bar is substantially similar to *Near, Robinson, Keefe,* and *Krebiozen, supra,* wherein it was held that no prior restraint was proper.

The courts in the cases cited above have discussed the fact that where publications are made which violate the First Amendment freedoms the states afford proper redress for injured parties in the form of defamation or libel actions. It is our opinion that such reasoning is applicable to the case at bar and that appellee's remedy is one at law, if any remedy is available.

We have noted, as have the courts in the cases cited above, that in a system which does not allow the enjoining of speech, certain abuses of the constitutional privilege will almost necessarily result. In the past year it has been obvious that such abuse is even more widespread than has been the case in the past. It is our opinion that although such abuse

should be abhorred, it is nonetheless better to have a legal system that allows the opportunity for abuse than to have a legal system which would permit the censorship of free speech.

For the above stated reasons, it is our opinion that the trial court erred in granting the preliminary injunction.

Cause reversed and remanded and the trial court is hereby ordered to dissolve said preliminary injunction and to conduct any further necessary proceedings not inconsistent with this opinion.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 312 N.E.2d 85.