665 F.2d 305
 7 Media L. Rep. 2372
 Beatrice T. GILBERT a/k/a Beatrice Gilbert Spence, Plaintiff-Appellant,
v.
MEDICAL ECONOMICS COMPANY, a Division of Litton Industries,
Inc.; Litton Industries, Inc., a Delaware
corporation; and Bart Sheridan,
individually; and John Does
I-X, Defendants-Appellees.
 No. 80-1316.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted May 11, 1981.
Decided Nov. 30, 1981.
 
 Ronald H. Shear of Tilly & Graves, Denver, Colo., for plaintiff-appellant.
 Thomas B. Kelley of Yegge, Hall & Evans, Denver, Colo., for defendants-appellees.
 Before BARRETT, DOYLE and McKAY, Circuit Judges.
 McKAY, Circuit Judge.
 
 
 1
 This is an appeal from the trial court's grant of summary judgment for defendants in a diversity case arising from defendants' alleged tortious invasion of plaintiff's privacy. On April 3, 1978, defendants published in the periodical Medical Economics an article entitled "Who Let This Doctor In The O.R.? The Story Of A Fatal Breakdown In Medical Policing." The article, a copy of which is contained in the record before us, outlines two incidents of alleged medical malpractice in which patients of plaintiff, an anesthesiologist, suffered fatal or severely disabling injuries in the operating room as a result of plaintiff's acts of alleged malpractice. The article indicates that in the case of the disabling injuries, plaintiff's insurer settled the ensuing malpractice action for $900,000. It notes further that in the case of the fatal injury, the patient's family was attempting to reach a settlement. Following a description of these incidents, the article suggests that they occurred because of "a collapse of self-policing by physicians and of disciplinary action by hospitals and regulatory agencies." To show the substantiality of this inadequate policing of medical personnel, the article discusses plaintiff's history of psychiatric and related personal problems. The article suggests (1) that there was a causal relationship between plaintiff's personal problems and the acts of alleged malpractice, (2) that plaintiff's lack of capacity to engage responsibly in the practice of medicine was or should have been known to the policing agents of the medical profession, and (3) that more intensive policing of medical personnel is needed. The article identified plaintiff by name and included her photograph.
 
 
 2
 On the basis of the pleadings and a copy of the article, the district court held a hearing on cross-motions for summary judgment. Defendants moved for summary judgment on the ground that the article contained only truthful factual statements or opinions relating to newsworthy matters and therefore was protected by the first amendment. Plaintiff conceded that no issues of fact were involved. She urged summary judgment on the theory that although the general theme of the article was newsworthy and therefore privileged, the defendants nevertheless had tortiously invaded her privacy by including in the article her name, photograph, and certain private facts about her life that were not privileged.
 
 
 3
 In granting summary judgment for the defendants, the trial court agreed that the general subject of the article was indeed newsworthy insofar as it dealt with the competency of licensed professionals. The court noted that the public has a legitimate concern with the fitness of professionals to hold the public trust that a professional license bestows. It further noted that the area of legitimate public concern extends far enough to encompass accounts of factors in the life of a licensed professional that may impair that person's ability to perform competently. The court concluded that, where the general contents of an article are newsworthy, editors must be allowed a measure of discretion to determine how an article should be written and what details should be included. To question whether defendants should have omitted certain details from this particular article, the court believed, would amount to "editorial second-guessing" rather than legal analysis. The court therefore held that the entire article was protected by the first amendment.
 
 I.
 
 4
 On appeal, plaintiff's first contention is that defendants tortiously invaded her privacy by publicly disclosing embarrassing private facts about her personal life. Colorado has recognized a common-law right to privacy. Rugg v. McCarty, 173 Colo. 170, 476 P.2d 753 (1970). Defendants, however, raised the defense of first amendment privilege, and thus, we must turn to federal substantive law in this diversity case to determine the extent of defendants' federal constitutional defense.
 
 
 5
 The first amendment sometimes protects what would otherwise be an actionable invasion of privacy where a publication by the media is involved. Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975); Cantrell v. Forest City Publishing Co., 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974); Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967). See also W. Prosser, Handbook of the Law of Torts § 118, at 826-27 (4th ed. 1971). This constitutional privilege clearly applies to the public disclosure of private facts, the invasion of privacy tort alleged in this action. Cox Broadcasting Co. v. Cohn, 420 U.S. at 489, 95 S.Ct. at 1043. The privilege extends to public figures, as well as to those private individuals "who have not sought publicity or consented to it, but through their own conduct or otherwise have become a legitimate subject of public interest." Restatement (Second) of Torts § 652D, comment f (1977). This privilege is not absolute, however, and as in other areas involving the media, the right of the individual to keep information private must be balanced against the right of the press to disseminate newsworthy information to the public. In attempting to strike an acceptable balance between these competing interests, liability may be imposed for publicizing matters concerning the private life of another "if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." Restatement (Second) of Torts § 652D (1977). As comment h points out, not all matters are of legitimate public interest:
 
 
 6
 The line is to be drawn when the publicity ceases to be the giving of information to which the public is entitled, and becomes a morbid and sensational prying into private lives for its own sake with which a reasonable member of the public, with decent standards, would say that he had no concern.
 
 
 7
 Thus, dissemination of non-newsworthy private facts is not protected by the first amendment. The privilege does immunize the reporting of private facts, however, when discussed in connection with "matters of the kind customarily regarded as 'news.' " Comment g. Any information disseminated "for purposes of education, amusement or enlightenment, when the public may reasonably be expected to have a legitimate interest in what is published," is also protected by the privilege. Comment j. Thus, it is clear from the foregoing that the first amendment protects the publication of private facts that are "newsworthy," that is, of legitimate concern to the public. See Time, Inc. v. Hill, 385 U.S. 374, 388-89, 87 S.Ct. 534, 542-43, 17 L.Ed.2d 456 (1967). This standard has been accepted by other courts. See, e. g., Campbell v. Seabury Press, 614 F.2d 395, 397 (5th Cir. 1980); Virgil v. Time, Inc., 527 F.2d 1122, 1129 (9th Cir. 1975), cert. denied, 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 823 (1976). In our view, this standard properly restricts liability for public disclosure of private facts to the extreme case, thereby providing the breathing space needed by the press to properly exercise effective editorial judgment. This standard provides a privilege for truthful publications that ceases to operate only when an editor abuses his broad discretion to publish matters that are of legitimate public interest.
 
 
 8
 Even where certain matters are clearly within the protected sphere of legitimate public interest, some private facts about an individual may lie outside that sphere. In Virgil v. Time, Inc., 527 F.2d 1122 (9th Cir. 1975), an action by a surfer based on publicity about his private affairs in an article about surfing, the Ninth Circuit pointed out that
 
 
 9
 (t)he fact that (people) engage in an activity in which the public can be said to have a general interest does not render every aspect of their lives subject to public disclosure.
 
 
 10
 Id. at 1131. Because each member of our society at some time engages in an activity that fairly could be characterized as a matter of legitimate public concern, to permit that activity to open the door to the exposure of any truthful secret about that person would render meaningless the tort of public disclosure of private facts. The first amendment does not require such a result. Therefore, to properly balance freedom of the press against the right of privacy, every private fact disclosed in an otherwise truthful, newsworthy publication must have some substantial relevance to a matter of legitimate public interest. When these conditions are satisfied, the facts in the publication and inferences reasonably drawn therefrom fall within the ambit of first amendment protection and are privileged.
 
 
 11
 Plaintiff maintains that the publishing of her photograph, name, and private facts about her psychiatric history and marital life adds nothing to the concededly newsworthy topic of policing failures in the medical profession. Plaintiff argues that any relationship between her psychiatric history and marital life and the incidents of alleged malpractice is purely speculative, that this information was not of legitimate public interest, and that defendants unjustifiably "appointed themselves judge, jury and executioner of (plaintiff)." Plaintiff's Brief at 17.
 
 
 12
 With respect to the publication of plaintiff's photograph and name, we find that these truthful representations are substantially relevant to a newsworthy topic because they strengthen the impact and credibility of the article. They obviate any impression that the problems raised in the article are remote or hypothetical, thus providing an aura of immediacy and even urgency that might not exist had plaintiff's name and photograph been suppressed. Similarly, we find the publication of plaintiff's psychiatric and marital problems to be substantially relevant to the newsworthy topic. While it is true that these subjects would fall outside the first amendment privilege in the absence of either independent newsworthiness or any substantial nexus with a newsworthy topic, here they are connected to the newsworthy topic by the rational inference that plaintiff's personal problems were the underlying cause of the acts of alleged malpractice.
 
 
 13
 Plaintiff claims that the drawing of such inferences is not within the protected scope of editorial discretion unless a public tribunal first declares such an inference to be legally established. We conclude, however, that a rule forbidding editors from drawing inferences from truthful newsworthy facts would result in a far too restrictive and wholly unjustifiable construction of the first amendment privilege. If the press is to have the generous breathing space that courts have accorded it thus far, editors must have freedom to make reasonable judgments and to draw one inference where others also reasonably could be drawn. This is precisely the editorial discretion contemplated by the privilege. Because the inferences of causation drawn in this case are not, as a matter of law, so purely conjectural that no reasonable editor could draw them other than through guesswork and speculation, we hold that defendants did not abuse their editorial discretion in this case.
 
 
 14
 Since we have concluded that the inference of causation properly could be drawn in the exercise of reasonable editorial discretion, we find that plaintiff's name, photograph, and psychiatric and marital problems, are substantially relevant to the newsworthy topic of policing the medical profession. If plaintiff's psychiatric and marital problems plausibly contributed to her commission of medical malpractice, then the publication of these facts together with her name and photograph serves the legitimate public interest of warning potential future patients, as well as surgeons and hospitals, of the risks they might encounter in being treated by or in employing the plaintiff. This is particularly crucial where, as here, potential patients and colleagues may not otherwise receive notice of these risks. Clearly, under these circumstances the public has a very strong and immediate legitimate interest, and the first amendment protects the media's right to reveal this information.
 
 
 15
 We must ourselves apply the law to the facts in this case. Every relevant fact is set forth in the article itself, a copy of which is before us. There are no issues of fact that turn on demeanor evidence or other evidence of witness credibility. The parties agree that all the facts are undisputed. Record, vol. 2, at 11. Although application of the newsworthiness standard to undisputed facts may well present a jury question in some cases, here objective and reasonable minds cannot differ in finding the article in question to be privileged in its entirety, thus precluding liability for public disclosure of private facts.[1]II.
 
 
 16
 Plaintiff's second contention is that the article invaded her privacy by casting her in a false light before the public.[2] Plaintiff's argument is procedurally foreclosed because of her failure to raise or preserve this issue for a consideration of its merits on appeal. Plaintiff's complaint alleged that the article invaded her privacy by (a) intrusion, (b) appropriation, (c) public disclosure of private facts, and (d) "(b)y vilifying and exposing plaintiff to public ridicule, embarrassment and humiliation." Record, vol. 1, at 7. Plaintiff contends that by alleging "vilification" she has alleged a "false light" cause of action. Giving full recognition to the liberality with which we must construe pleadings under the Federal Rules of Civil Procedure, it is possible to construe the complaint as alleging this cause of action even though it is not patently clear.
 
 
 17
 Turning from plaintiff's pleadings to the issues she raised and preserved at the hearing, however, we observe that plaintiff discussed only the public disclosure of private facts cause of action. She made no attempt to indicate to the trial court that she wished to proceed on her false light theory. The clarity of the position before us nowhere appears in the record below. As a result, it was reasonable for defendants and the court to assume that plaintiff had abandoned every alleged theory except public disclosure of private facts. The reasonableness of this assumption and thus the propriety of the court's dismissal of plaintiff's entire action is reinforced by plaintiff's statement at the hearing that "no factual issues (are) involved here," Record, vol. 2, at 11, presumably including plaintiff's present factual arguments under the "false light" theory; by plaintiff's failure to raise any issue other than public disclosure of private facts when given ample opportunity to do so, id. at 10-15, 20, 21; and by plaintiff's failure to preserve any issue for further consideration by the trial court when at the close of the hearing, the court dismissed the complaint. Id. at 21. At the time of dismissal, both counsel were asked whether they had anything else to add, whereupon each responded in the unequivocal negative. Id. Thus, in the context of a summary judgment hearing, when given a fair opportunity to raise the issue of a possible false light cause of action which was not clear in the pleading, plaintiff did not clarify to the court that she intended to do so. Under these circumstances, it would be an unjustifiable violation of the policy favoring judicial economy to allow plaintiff now to pursue her false light theory at the appellate stage of this case.
 
 
 18
 Accordingly, the court did not abuse its discretion in finding that defendants are entitled to summary judgment as to every issue in this case.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 The Colorado Supreme Court has held in a libel action that the question of whether a publication is newsworthy is a question of law for the court. Walker v. Colorado Springs Sun, Inc., 188 Colo. 86, 538 P.2d 450, cert. denied, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). In Virgil v. Time, Inc., 527 F.2d 1122 (9th Cir. 1975), cert. denied, 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 823 (1976), the Ninth Circuit, sitting as the state's highest court in a diversity case, took a contrary position. Applying California law, that court approved an approach that permits the jury, in some circumstances, to determine newsworthiness according to the mores of the community. Id. at 1130. The court in Virgil recognized, however, that it is the judge who must decide whether a jury question is presented:
 (T)he function of the court on motion for summary judgment is to decide whether, on the record, reasonable minds could differ. If in the judgment of the court reasonable minds could not differ, and the answer on which reasonable minds agree favors invocation of the privilege, then summary judgment for the (magazine owner) would be proper.
 Id. at 1131. Since we have concluded that reasonable minds could not differ in finding the article in question to be privileged, summary judgment for defendants would be proper in the instant case even under the Virgil approach.
 The reason for requiring the judge to make a threshold determination of whether a jury question exists was clearly stated in another Ninth Circuit case:
 When civil cases may have a chilling effect on First Amendment rights, special care is appropriate. Thus, a judicial examination at (the summary judgment stage) of the proceeding, closely scrutinizing the evidence to determine whether the case should be terminated in a defendant's favor, provides a buffer against possible First Amendment interferences.
 Guam Federation of Teachers, Local 1581 v. Ysrael, 492 F.2d 438, 441 (9th Cir.), cert. denied, 419 U.S. 872, 95 S.Ct. 132, 42 L.Ed.2d 111 (1974). This reasoning is fully applicable here. Requiring defendants to undergo a trial in this case would unnecessarily chill the exercise of their first amendment right to publish newsworthy information.
 
 
 [2]
 Restatement (Second) of Torts § 652A (1977) states that "(t)he right of privacy is invaded by (a) unreasonable intrusion upon the seclusion of another, ... (b) appropriation of the other's name or likeness, ... (c) unreasonable publicity given to the other's private life, ... or (d) publicity that unreasonably places the other in a false light before the public ...."