**ST. MARGARET MERCY HEALTH-CARE CENTERS, INC., Appellant–Respondent,**

v.

**Caesar Y. HO, M.D., Kwang D. You, M.D., and Victor K. O'Yek, M.D., Appellees–Petitioners.**

**No. 45A03–9510–CV–337.**

Court of Appeals of Indiana.

April 25, 1996.

---

W. Patrick Downes, John H. Lloyd, IV, Galvin Galvin & Leeney, Hammond, William G. Swindal, Christine L. Olson, Hinshaw & Culbertson, Chicago, IL, for Appellant.

Nathaniel Ruff, Merrillville, Samuel L. Cappas, Highland, for Appellee.

## OPINION

GARRARD, Judge.

The trial court found that actions by Saint Margaret Mercy Healthcare Centers, Inc. (hereinafter "Hospital") defamed Dr. Ho, Dr. You, and Dr. O'Yek (hereinafter "Doctors"). The trial court issued a preliminary injunction restraining the Hospital from certain publications and advertisements, and the Hospital appeals. We reverse.

### FACTS

Doctors are cardiovascular surgeons with clinical privileges at the Hospital. After Eugene Diamond arrived at the Hospital in 1991 as president and chief executive officer, he initiated a study of the Hospital's open heart surgery program. At the conclusion of the study and after several meetings during which proposals were discussed, the medical staff executive committee decided in favor of having a single group of doctors treat the cardiovascular patients. An exclusive arrangement to perform open heart surgery at the Hospital would improve standardization of equipment and the predictability of costs. Moreover, operations would be streamlined, and the group of surgeons would be bound to a fee schedule. The Hospital entered into an exclusive contract effective May 1, 1995 with Cardiothoracic and Vascular Surgical Associates, S.C. ("CVSA") to perform open heart bypass and valve surgery at the Hospital. The Hospital notified Doctors of the exclusive contract with CVSA and that they could no longer perform coronary artery bypass or coronary valve surgery unless they were em-

ployed or engaged by CVSA. Doctors did not seek to join CVSA, but they continued their staff appointments at the Hospital and were allowed to perform non-open heart surgeries.

The Hospital prepared a news release for May 1, 1995, which announced its exclusive contract with CVSA. The news release stated that "[t]he change is expected to improve outcomes, lower mortality rates and reduce costs for coronary artery bypass surgery, the most common and most studied open heart surgery procedure." Record at 117. After noting that CVSA's overall mortality rate was below the national average, the news release stated that "[c]osts and quality benchmarks in Northwest Indiana have been significantly higher than national averages." The news release cited a 1992 study which reported that elderly people in Northwest Indiana undergo open-heart surgery more often and have a higher mortality rate than other groups of people in other parts of the country.

The news release by the Hospital triggered two articles in local newspapers. The first, entitled "Death Rate Spurs Doctor Swap," stated that the Hospital's eleven heart surgeons were being replaced by a group of Oak Lawn doctors with a better track record. The second article was entitled "Hospital decision causes stir," and specifically named the Doctors as heart surgeons who were being replaced as the Hospital sought to improve its mortality rate of 8.3 percent for coronary bypass operations.

Additionally, the Hospital prepared an advertisement announcing its new team of heart surgeons. The advertisement stated that Northwest Indiana's mortality rate for open heart surgery is higher than other parts of the country. It then stated the Hospital's goal of improving surgical outcomes, improving survival rates, and reducing costs.

Doctors filed a six count complaint seeking damages for defamation and injunctive relief which would preclude further publication and advertisement. After a hearing, the trial court concluded that the Hospital's news re-

lease and advertisement resulted in articles and broadcasts which implied and imputed a high mortality rate to the Doctors. The court found that the Doctors' reputations and their ability to produce income had been damaged. The court then concluded that the Doctors had met their burden of proof on the issues of defamation and libel. The trial court issued a preliminary injunction enjoining the Hospital (1) from advertising the exclusive employment of CVSA to perform cardiac bypass and cardiac valve surgery, (2) from attributing the high cardiac mortality rate of the Hospital to the Doctors, and (3) from publishing and/or advertising the restriction of the Doctors' surgical privileges. This appeal ensued.

### ISSUES [1]

I. Whether the law of the case doctrine bars this appeal.

II. Whether the preliminary injunction constitutes an unconstitutional prior restraint.

## DISCUSSION & DECISION

### I.

 Initially, we address the Doctors' claim that much of this appeal is barred by the law of the case doctrine. This doctrine stands for the proposition that facts established at one stage of a proceeding, which were part of an issue on which judgment was entered and appeal taken, are unalterably and finally established as part of the law of the case and may not be relitigated at a subsequent stage. *Platt v. State of Indiana,* 664 N.E.2d 357, 361–362 (Ind.Ct.App. April 9, 1996) (citing *Otte v. Otte,* 655 N.E.2d 76, 83 (Ind.Ct.App.1995)), *reh. denied, trans. pending.* We find no merit to the Doctors' argument that this doctrine should apply here.

The Hospital filed a motion to dismiss the Doctors' defamation claims on July 3, 1995. Before it ruled on this motion, the trial court issued a preliminary injunction and entered its findings and conclusions. The Hospital filed a motion to correct error on August 30,

---

1. Because we conclude that the preliminary injunction is an unconstitutional prior restraint, we need not reach the Hospital's argument that the

lower court abused its discretion in issuing the injunction.

1995 challenging the court's factual findings and conclusions. The trial court treated the Hospital's motion to correct error as a motion to reconsider the preliminary injunction and denied the motion on September 29, 1995. The Hospital then pursued the present appeal.

The Doctors argue that since the court did not deny the Hospital's motion to dismiss until November 11, 1995 and the Hospital did not appeal its denial, the Hospital should be precluded from pursuing the current appeal. Essentially, the Doctors assert that the Hospital is circumventing the appellate process by not appealing the denial of its motion to dismiss the defamation claims.

■■ The Hospital pursued its first available avenue for appellate review on the questioned issues. Indeed, the appellate machinery had already been set in motion before the trial court finally ruled on the Hospital's motion to dismiss the defamation claim. Thus, we cannot say that the Hospital is attempting to circumvent the appellate process. Moreover, the law of the case doctrine does not bar appellate review of an issue determined at the trial level. Instead, the doctrine mandates that an appellate court's determination of a legal issue binds both the trial court and the court on appeal in any subsequent appeal involving the same case and relevantly similar facts. *State v. Huffman*, 643 N.E.2d 899, 901 (Ind.1994), *reh. denied.* The doctrine's purpose, to minimize unnecessary relitigation of legal issues resolved by an appellate court, simply does not apply here. *See id.*

## II.

■ The Hospital asserts that the preliminary injunction here acts as an unconstitutional prior restraint on speech in violation of the First Amendment of the United States Constitution. The trial court enjoined the Hospital (1) from advertising the exclusive employment of CVSA to perform cardiac bypass and cardiac valve surgery, (2) from attributing the high cardiac mortality rate of the Hospital to the Doctors, and (3) from publishing and/or advertising the restriction of the Doctors' surgical privileges. The Hospital relies upon *American Broadcasting*

*Companies, Inc. v. Smith Cabinet Manufacturing Co., Inc.*, 160 Ind.App. 367, 312 N.E.2d 85 (1974) in which this court reversed an injunction preventing the broadcast of allegedly false and defamatory information.

In *American Broadcasting*, a manufacturer of infant cribs learned of a planned documentary to be aired depicting one of its cribs catching fire and burning within seconds. The manufacturer claimed the documentary was false since it condensed a ten minute test into a period of forty seconds, which made the burning of the crib appear more rapid than it actually occurred. *Id.* 312 N.E.2d at 86–87. This court found the television segment to be a matter of public interest and dissolved the injunction. *Id.* at 90, 92. We opined that the manufacturer's remedy, if a remedy existed, was one at law. *Id.* at 91.

■ Initially, we note that an injunction operates, not to redress alleged private wrongs, but to suppress the future distribution of literature. *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 418–19, 91 S.Ct. 1575, 1577–78, 29 L.Ed.2d 1 (1971). The special vice of a prior restraint is that communication is suppressed, either directly or by inducing excessive caution in the speaker, before an adequate determination that it is unprotected by the First Amendment. *Pittsburgh Press Co. v. Human Rel. Comm'n.*, 413 U.S. 376, 390, 93 S.Ct. 2553, 2561, 37 L.Ed.2d 669 (1973), *reh. denied.* Such a prior restraint is rarely permitted under the First Amendment. *American Broadcasting*, 312 N.E.2d at 91. Certain areas subject to prior restraints include war related information, obscene material, and statements which in and of themselves provoke violence. *Id.* at 88, citing *Near v. Minnesota*, 283 U.S. 697, 716, 51 S.Ct. 625, 631, 75 L.Ed. 1357 (1931). Any prior restraint on expression, however, comes to appellate review with a heavy presumption against its constitutional validity. *Organization for a Better Austin v. Keefe*, 402 U.S. at 419, 91 S.Ct. at 1577.

Today we hold that the trial court erred by issuing the preliminary injunction at issue. We find instructive the United States Supreme Court's decision in *Organization for a*

*Better Austin v. Keefe,* 402 U.S. 415, 91 S.Ct. 1575. There the Court reversed an injunction which enjoined petitioners from passing out pamphlets, leaflets or literature of any kind which criticized respondent's business practices. After noting that the truth or validity of the publication was immaterial, the Court held that respondent failed to meet the heavy burden of justifying a prior restraint on petitioners' peaceful distribution of literature criticizing his real estate business. *Id.* at 418, 420, 91 S.Ct. at 1577, 1578. At its worst, the Hospital's news release and advertisement can be deemed as criticism of the Doctors' medical practice. Doctors assert, and the trial court found, that their reputations were damaged and their ability to produce income was harmed. These ramifications are insufficient, however, to justify a prior restraint. The Doctors' remedy for any wrongful conduct by the Hospital is one at law.

We also find support for our decision in *American Broadcasting,* 312 N.E.2d 85. There we stated that case law firmly establishes "that a prior restraint is not permissible for either a publication or a republication of a statement of public interest." *Id.* at 91. It is our opinion that the information contained in the news release, the advertisement, and the newspaper articles was a matter of public interest. The public interest includes a wide range of considerations including health and the availability of health care. The injunction here forbade the Hospital from making the public aware of improvements in its ability to provide quality healthcare at reasonable costs. Moreover, the fitness of a particular professional healthcare provider is a matter of legitimate public concern. *See Gilbert v. Medical Economics Co.,* 665 F.2d 305, 309 (10th Cir.1981). Thus, we conclude that the trial court erred in issuing the preliminary injunction in the present case.

### CONCLUSION

This cause is reversed and remanded to the trial court with instructions to dissolve the preliminary injunction and to conduct any further necessary proceedings not inconsistent with this opinion.

HOFFMAN and KIRSCH, JJ., concur.