**Vron MISHLER and Dianne Mishler, Appellants–Plaintiffs,**

v.

**MAC SYSTEMS, INC., Appellee– Defendant.**

No. 27A02–0111–CV–778.

Court of Appeals of Indiana.

July 16, 2002.

Jerry R. Shoup, Marion, IN, Attorney for Appellants.

## OPINION

HOFFMAN, Senior Judge.

Plaintiffs–Appellants Vron Mishler and Dianne Mishler (collectively, "the Mishlers") appeal the trial court's grant of a preliminary injunction requested by Defendant–Appellee MAC Systems, Inc.

("MAC"). We reverse and remand.[1]

The following issue is dispositive: whether the trial court's preliminary injunction is improper because it violates the prohibition against restriction of speech under Article I, Section 9 of the Indiana Constitution.

The Mishlers hired MAC to render certain fire restoration and construction services upon a building owned by the Mishlers in Marion, Indiana. After a dispute arose between the parties, and a stop-work order had been entered by the County Building Department of Grant County, the Mishlers posted messages at the job site that referred to their concerns about the quality of MAC's services. Included as part of these posted messages was an eight foot by eight foot sign on the building. The stop-work order was attached to the sign and circled in red paint. Further, the sign stated:

PUBLIC SERVICE NOTICE

*MAC SYSTEMS, INC.*
STOP WORK ORDER

CODE VIOLATIONS SEPT. 12, 01

1 2X8S SPANS 15'8" MAX SPAN 13'5"

2 RAFTERS 19' NEED SUPPORTED SHOULD BE 13'9"

3 HEADERS HAVE NO SUPPORTS

4 PIER LOCATION'S [SIC] IN QUESTION

5 SECOND FLOOR DESIGNED INCORRECTLY

6 NAILS HOLDING UP SECOND FLOOR

7 SECOND FLOOR SHOULD BE REMOVED AND REBUILT TO CODE
THEIR CONTRACT STATES QUALITY WORK TO U.S. AND MANY OTHERS[.] THIS IS *NOT*[.] CLAIMED TO BE A MEMBER OF B.B.B.[2] *NOT*.

Appellants' Appendix at 11; Appellants' "Exhibit Volume" at 1.

The Mishlers filed a suit for damages against MAC. MAC answered and raised counterclaims on the basis of breach of contract and libel/slander. MAC also petitioned the court to issue an injunction enjoining the Mishlers from "[m]aking verbal or written statements to members of the public regarding the character, qualifications, workmanship or reputation of MAC" and "[d]isplaying signs referring, in any way, to MAC, its character, qualifications, workmanship or reputation, or to this case." Appellants' Appendix at 8. The trial court held a hearing on the petition and subsequently issued an injunction. The trial court's order did not prohibit the Mishlers from making verbal comments about MAC, but it did direct the Mishlers to remove the sign and to refrain from putting up any other sign referring to MAC.

The Mishlers contend that the trial court's injunction operates as an unconstitutional prior restraint on speech in violation of Article I, Section 9 of the Indiana Constitution and the First Amendment of the United States Constitution. We limit

---

1. We note that MAC did not file a brief in this appeal. Where the appellee fails to file a brief, it is within our discretion to reverse the trial court's decision if the appellant makes a prima facie showing of reversible error. *Harris v. Delaware County Division of Family and Children Services*, 732 N.E.2d 248, 249 (Ind. Ct.App.2000). This rule is not for the benefit of the appellant. Rather, it was established for the protection of the Court to relieve us of the burden of controverting the arguments advanced for a reversal when this burden rests with the appellees. *Id.*

2. The "B.B.B." is the Better Business Bureau.

our focus to the Mishlers' contention as it pertains to the Indiana Constitution.[3] For purposes of providing a context for our discussion of free speech under the Indiana Constitution, however, we will first discuss the effect of a prior restraint upon free speech. We will then, for the same purpose, look at two recent Indiana cases that discuss the propriety of an injunction against speech under the First Amendment of the United States Constitution. After establishing the context, we will address the state constitutional issue.

 The term "prior restraint" is used to describe "administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States,* 509 U.S. 544, 550, 113 S.Ct. 2766, 2771, 125 L.Ed.2d 441 (1993). Restraining orders and injunctions that forbid future speech activities are classic examples of prior restraints. *Id.* The special vice of a prior restraint is that "communication will be suppressed, either directly or by inducing excessive caution in the speaker, before an adequate determination that it is unprotected by the First Amendment." *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations,* 413 U.S. 376, 93 S.Ct. 2553, 2561, 37 L.Ed.2d 669 (1973). The thread running through free speech cases is that prior restraints on speech and publication are the most serious and the least tolerable infringement on free speech rights. *Nebraska Press Association v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 2803, 49 L.Ed.2d 683 (1976). "A criminal penalty or a judgment in a defamation case is subject to the whole panoply of protections afforded by deferring the impact of the judgment until all avenues of appellate review have been

exhausted. Only after judgment has become final, correct or otherwise, does the law's sanction become fully operative." *Id.* A prior restraint, by contrast, and by definition, "has an immediate and irreversible sanction. If it can be said that a threat of criminal or civil sanctions after publication 'chills' speech, prior restraint 'freezes' it at least for a time." *Id.* Although a prior restraint is not per se unconstitutional, *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448 (1975), it comes to an appellate court with a "heavy presumption" against its constitutional validity. *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 91 S.Ct. 1575, 1578, 29 L.Ed.2d 1 (1971).

In the recent case of *St. Margaret Mercy Healthcare Centers, Inc. v. Ho,* 663 N.E.2d 1220 (Ind.Ct.App.1996), this court held that a preliminary injunction was an unconstitutional prior restraint under the First Amendment. In the case, St. Margaret Mercy Healthcare Centers, Inc. (the "Hospital") decided to suspend the privileges of the cardiovascular surgeons on its staff and enter into an exclusive contract with an outside group of surgeons to perform open-heart bypass and valve surgery at the Hospital. In an effort to publicize the contract, the Hospital issued a news release which stated that "[t]he change is expected to improve outcomes, lower mortality rates and reduce costs for coronary artery bypass surgery, the most common and most studied open heart surgery procedure." *Id.* at 1222. The news release further stated that "[c]osts and quality benchmarks in Northwest Indiana [the Hospital's locale] have been significantly higher than national averages." *Id.* The issuance of the news release was followed

---

**3.** The posture of this case renders review upon non-constitutional grounds unworkable. Because we are reviewing a trial court's order, not a statute or order from a different branch of government, we will decide this case on constitutional grounds.

by two articles in local newspapers. The first article was entitled "Death Rate Spurs Doctor Swap," and the second specifically named the staff surgeons whose privileges had been revoked. The Hospital then issued an advertisement stating its goal of improving surgical outcomes by employing the services of the outside surgical group.

The staff surgeons filed a complaint for defamation. The staff surgeons also sought a preliminary injunction that would prohibit the Hospital from issuing any more news releases or advertisements referring to the new contract or mentioning the pre-contract high mortality rate at the Hospital. The trial court issued the injunction.

On appeal, the Hospital asserted that the preliminary injunction acted as a prohibited prior restraint under the First Amendment. After pointing out the particularly pernicious effect of a prior restraint upon free speech, we held that the potential damage to the staff surgeons' reputation did not justify a prior restraint on speech. *Id.* at 1224. In so holding, we alluded to *Better Austin*, wherein the United States Supreme Court opined that an injunction prohibiting a group from distributing peaceful literature against a businessman was unconstitutional as the group's free speech rights outweighed the businessman's interest in being free from public criticism of his business practices. *Id.* We also held that the staff surgeons' remedy for any wrongful conduct was a suit for damages. *Id.* As an additional ground for setting aside the injunction, we noted that the Hospital's news releases and advertisements were statements of "public interest" and "legitimate public concern." *Id.* (citing *Gilbert v. Medical Economics Co.*, 665 F.2d 305, 309 (10th Cir.1981); *American Broadcasting Companies, Inc. v. Smith Cabinet Manufacturing Co.*, 160 Ind.App. 367, 312 N.E.2d 85 (1974)).

In a second recent case, *Barlow v. Sipes*, 744 N.E.2d 1 (Ind.Ct.App.2001), *trans. denied*, a two-judge panel of this court upheld a trial court's injunction against speech pending resolution of tort claims.[4] In the case, the owner of an automobile body shop brought an action against an insurance agent and his assistant for intentional interference with a business relationship and defamation, alleging that the insurance agent and his assistant had repeatedly made derogatory comments about the body shop to policy holders and had steered policy holders to another local body shop. The owner requested a preliminary injunction to prevent further harm pending resolution of his action. The trial court issued the injunction, which ordered that the insurance agent and his assistant, among other things, "refrain from making false, negative or disparaging statements about the [body shop]." *Id.* at 5.

On appeal, the panel analyzed federal cases pertaining to the propriety of damage awards in defamation and/or libel actions. The panel applied these cases in its analysis of the prior restraint case before it, and concluded "that the speech enjoined by the preliminary injunction is of little constitutional import and that the injunction primarily operates to address alleged private wrongs committed by [the agent and his assistant] against [the owner], imputing dishonest business practices and discouraging individuals from patronizing the automobile repair business." *Id.* at 10.

---

4. The dissent stated that the injunction should have been overturned on non-constitutional grounds. Accordingly, the dissent did not address the free speech issue. *See* 744 N.E.2d at 11–13.

The panel held that the preliminary injunction "passes constitutional muster under the First Amendment." *Id.*

■ We now turn our attention to the issue raised by the Mishlers, i.e. whether the trial court's injunction violates the prohibition against restriction of free speech under Article I, Section 9 of the Indiana Constitution. Article I, Section 9 states that "[n]o law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever." A corresponding clause stipulates that "but for the abuse of that right, every person shall be responsible." Interpretation of the Indiana Constitution is controlled by the text itself, illuminated by history and by the purpose and structure of our constitution and the case law surrounding it. *Price v. State,* 622 N.E.2d 954, 957 (Ind. 1993). One contemporary writer has observed that the language of Article I, Section 9 "affirms the rights of expression in language much more comprehensive than the first amendment." Randal T. Shepard, *Second Wind for the Indiana Bill of Rights,* 22 Ind.L.Rev. 575, 581 n. 39 (1989). This court has held that our constitution "more jealously protects freedom of speech guarantees than does the United States Constitution." *Lach v. Lake County,* 621 N.E.2d 357, 362 n. 1 (Ind.Ct.App.1993), *trans. denied.*

■ One question that becomes immediately apparent is whether Article I, Section 9, which expressly refers to the passage of a law restricting free speech, also prohibits courts from accomplishing the same restriction through the issuance of an injunction. No Indiana case has directly addressed this issue under Article I, Section 9; however, the issue has been addressed under Article I, Section 23 of our constitution. Although Article I, Section 23, the Indiana Equal Privileges and Immunities Clause, expressly applies only to acts of the General Assembly, it has been interpreted to apply where the State is "sufficiently involved to treat decisive conduct as state action." *See Palin v. Indiana State Personnel Department,* 698 N.E.2d 347, 353–54 (Ind.Ct.App.1998).[5] This is consistent with the Supreme Court of New Mexico's statement concerning the free speech provisions of the Federal and New Mexico constitutions that "it should be borne in mind that the protection afforded by the Federal and State Constitutions was from restrictions that might be imposed by Congress and the Legislature. If the Congress and the Legislature are prohibited from abridging the freedom there is no reason why the courts be given greater power." *Blount v. TD Publishing Corp.,* 77 N.M. 384, 423 P.2d 421, 424 (1966).[6] We hold that Article I, Section 9 of the Indiana Constitution is intended to prohibit Indiana courts, as well as the General Assembly, from abridging the free speech rights of Indiana citizens.

■ Our supreme court has observed that the corresponding clauses of Article I, Section 9 are common in state

---

5. While our supreme court was very careful in *Price* to refer to the limitations placed upon the General Assembly by Article I, Section 9, it spoke in terms of the limitations placed upon "state action" in the later case of *Whittington v. State,* 669 N.E.2d 1363 (Ind.1996). Although both cases dealt with the issue of the General Assembly's power to limit speech through content-neutral statutes, and thus the issue before us was not before the court in *Price* and *Whittington,* we do not think that use of the term "state action" in *Whittington* was an oversight.

6. The New Mexico Constitution provides in pertinent part that "no law shall be passed to restrain or abridge the liberty of speech or of the press." N.M. Const. Article II, Section 17.

constitutions and are referred to as an explication of the "freedom-and-responsibility standard." *Price*, 622 N.E.2d at 958. Under this standard, a State "may not impair the flow of ideas; instead, its sole authority over expression is to sanction individuals who commit abuse." *Id.* Furthermore, a State may not choose the means by which a person decides to speak; a person must have an opportunity to speak his mind "in whatever manner the speaker deems most appropriate." *Whittington*, 669 N.E.2d at 1368. The freedom-and-responsibility standard was explained in the following way by the Supreme Court of Texas:

> The purpose of the [Texas Free Speech Provision] is to preserve what we call 'liberty of speech' and 'the freedom of the press,' and at the same time hold all persons accountable to the law for the misuse of that liberty or freedom. Responsibility for abuse of the privilege is as fully emphasized by its language as that the privilege itself shall be free from all species of restraint. But the abuse of the privilege, the provision commands, shall be dealt with in no other way. It is not to be remedied by a denial of the right to speak, but only by appropriate penalties for what is wrongfully spoken. Punishment for abuse of the right, not prevention of its exercise, is what the provision contemplates. There can be no liberty in the individual to speak, without the unhindered right to speak. It cannot co-exist with the power to compel his silence or fashion the form of his speech. Responsibility for the abuse of the right, in its nature pre-supposes freedom in the exercise of the right. It is a denial of the authority, anywhere, to prevent its exercise.

*Ex parte Tucker*, 110 Tex. 335, 220 S.W. 75, 76 (1920).[7]

■ In the present case, the Mishlers chose to express their displeasure with MAC through the medium of a sign. The Mishlers' expression, while not political speech, was arguably speech expressing a public concern, and was certainly within the broad category of speech "on any subject whatever" that is protected by Article I, Section 9. A hearing was held to determine whether a preliminary injunction should be issued to prevent the Mishlers from continuing to voice their dissatisfaction with MAC's services. Rather than a determination on the merits, the trial court's injunction was, at most, a determination that MAC could make a prima facie case against the Mishlers. *See* Indiana Trial Rule 65; *Boatwright v. Celebration Fireworks, Inc.*, 677 N.E.2d 1094 (Ind.Ct. App.1997). Thus, upon a preliminary determination of a prima facie nature, the Mishlers were prevented from expressing their opinion through the sign at issue or any sign like it. If the Mishlers chose to ignore the injunction and express their opinion in this manner, they were subject to punishment for contempt. *See Davis v. Sponhauer*, 574 N.E.2d 292, 302 (Ind.Ct. App.1991).

The upshot is that the Mishlers have been prevented from exercising their state constitutional right to speak "on any subject whatever" by the means they deemed most appropriate, and the restriction on their right to expression comes after only the most preliminary of determinations by the trial court. Our constitution does not give the trial court the power to force one person to speak well of another. The

---

7. The Texas Constitution provides in pertinent part that "[e]very person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or the press." Tex. Const. Article I, Section 8.

Mishlers are free to speak well or ill of MAC and if they have wronged MAC by abusing this freedom, they will be held responsible upon a final determination by the trial court. MAC's remedy lies in a suit for damages for any wrong against them, not in prior restraint of speech. The trial court erred in issuing the injunction.[8] Accordingly, we reverse the trial court and remand with instructions that it dissolve the injunction.[9]

SHARPNACK, J., concurs.

ROBB, J., concurring in result with separate opinion.

ROBB, Judge, concurring in result with separate opinion.

I respectfully concur in the result reached by the majority. The doctrine of judicial restraint precludes gratuitous judicial review of constitutional questions. *Daugherty v. Allen*, 729 N.E.2d 228, 233 (Ind.Ct.App.2000), *trans. dismissed*. Pursuant to this doctrine, we should not make a constitutional determination if the case can be disposed of justly on non-constitutional grounds. *Id.* (citing *Passwater v. Winn*, 248 Ind. 404, 229 N.E.2d 622, 623 (1967)). I therefore believe that we should determine whether the Mishlers are entitled to injunctive relief before we address

their constitutional claim that the injunction is an impermissible prior restraint.

The grant or denial of an injunction rests within the equitable discretion of the trial court and will be reversed only upon a showing of abuse of discretion. *Indiana Port Comm'n v. Consolidated Grain and Barge*, 701 N.E.2d 882, 886 (Ind.Ct.App. 1998), *trans. denied.* Nevertheless, the power to issue an injunction should be used sparingly, and such relief should not be granted except in rare instances in which the law and the facts are clearly in the moving party's favor. *Id.*

The trial court's discretion to grant or deny a preliminary injunction is measured by several factors: 1) whether the movant's remedies at law are inadequate, causing irreparable harm pending resolution of the substantive action; 2) whether the movant has demonstrated at least a reasonable likelihood of success at trial by establishing a prima facie case; 3) whether the threatened injury to the movant outweighs the potential harm the grant of the injunction would occasion upon the non-movant; and 4) whether the public interest would be disserved. *Id.* at 887. If the movant fails to prove any one or more of these requirements, the trial court's grant of an injunction is an abuse of discretion. *Id.*

---

**8.** We note that our decision is consistent with decisions from other jurisdictions with similar constitutional provisions. *See e.g., Willing v. Mazzocone*, 482 Pa. 377, 393 A.2d 1155, 1158 (1978) (holding that injunction preventing Willing from carrying a "sandwich-board" sign denouncing her former lawyers, while ringing a cowbell and blowing a whistle, was an impermissible prior restraint under the state constitution as Willing had a right "to freely speak her opinion regardless of whether that opinion is based on fact or fantasy."); *Hajek v. Bill Mowbray Motors, Inc.*, 647 S.W.2d 253, 255 (Tex.1983) (holding that injunction preventing Hajek from driving a vehicle with defamatory message on all four

sides that Mowbray Motors sold him a "lemon" was an improper prior restraint as "[d]efamation alone is not a sufficient justification for restraining an individual's right to speak freely").

**9.** Having found that the injunction constitutes an impermissible prior restraint under our state constitution, we need not consider whether the federal constitution also applies to prevent the injunction. *See Mountain States Telephone and Telegraph Co. v. Arizona Corporation Commission*, 160 Ariz. 350, 773 P.2d 455, 461 (1989).

The law is well settled that a party which suffers "mere economic injury" is not entitled to injunctive relief because an award of post-trial damages is sufficient to make the party whole. *Id.* The ability to obtain damages in the form of a money judgment for economic injury represents an adequate legal remedy. *Daugherty,* 729 N.E.2d at 235. Here, if MAC proceeded to trial with a suit alleging that the Mishlers's statements were falsehoods, it would invariably seek compensation for damages sustained to its reputation. Damages as a result of injury to reputation are properly recoverable in a tort action. *Id.* Because MAC has the availability of a tort suit to remedy the damages incurred to its reputation as a result of the Mishlers' statements, injunctive relief is not warranted. Further, because reversal is called for under state law, I believe that we need not address the Mishlers' constitutional claim that the injunction is an impermissible prior restraint under the Indiana Constitution.