ABERDEEN APARTMENTS, et al., Appellant–Plaintiffs

v.

CARY CAMPBELL REALTY ALLIANCE, INC., Appellee–Defendant.

No. 29A04–0406–CV–297.

Court of Appeals of Indiana.

Jan. 11, 2005.

Rehearing Denied March 8, 2005.

Andrew C. Charnstrom, Maureen E. Ward, Wooden & McClaughlin, LLP, Indianapolis, IN, Attorneys for Appellant.

Terry R. Curry, Sommer, Barnard, P.C., Indianapolis, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

Aberdeen Apartments and ninety-five other apartment communities[1] in Hamilton, Hancock, Hendricks, Johnson, Marion, and Shelby counties (collectively "the Apartments"), appeal the trial court's denial of their motion for a preliminary injunction against Cary Campbell Realty

Alliance, Inc. ("Campbell Realty"). We reverse and remand.

*Issues*

The Apartments raise four issues for our review, which we consolidate and restate as follows:

1. Whether the trial court properly denied the Apartments' motion for a preliminary injunction because the Apartments failed to show that they were reasonably likely to succeed at trial on their trespass claim and because they failed to show irreparable harm; and

2. Whether the trial court properly denied the Apartments' motion for a preliminary injunction because the preliminary injunction sought by the Apartments is an impermissible prior restraint under the United States and Indiana Constitutions.

*Facts and Procedural History*

Campbell Realty is an Indiana corporation with its principal office in Hamilton County. It is a for-profit business that seeks to sell new homes to first-time home buyers. In order to find new buyers, Campbell Realty publishes the Renter's Gazette. The Renter's Gazette is a free publication that Campbell Realty has distributed to numerous apartment communities throughout central Indiana for the last two to three years. In *City of Indianapolis v. Campbell*, 792 N.E.2d 620, 626 (Ind. Ct.App.2003), we held that the Renter's Gazette qualified as a newspaper under a City of Indianapolis and Marion County ordinance. The Renter's Gazette has the appearance of a newspaper. It is printed on newsprint and is folded down the mid-

---

1. Campbell Realty states in their brief that ninety-seven apartment communities are involved in this case, whereas the Apartments indicate that only ninety-six communities are involved. We will use the number ninety-six, in the hope that counsel for the Apartments knows the exact number of clients that he or she represents.

dle. It is usually between eight and ten pages in length. The content of the Renter's Gazette varies. It often contains articles that are appealing to renters, such as how to keep one's apartment secure. It also usually contains the schedule of one of the local sports teams. Some of the articles in the Renter's Gazette are designed to cast apartment communities, their management, and landlords in a negative light. These articles have suggested that landlords were not concerned about their tenants' security, that landlords were thieves, and that landlords are somehow like the mafia. A large portion of the Renter's Gazette is devoted to advertisements. The majority of these ads offer for sale new homes with low monthly payments. Each of these ads lists a telephone number that prospective buyers can call. This telephone number connects the caller with Campbell Realty's answering service located in the state of Arizona. The answering service takes the name and telephone number of the caller and forwards this information to Campbell Realty's real estate agents in Indiana. The real estate agents then contact the caller and attempt to sell them a new house. In 2003, Campbell Realty located about five hundred new home buyers, and in 2002 they located between seven hundred and eight hundred new buyers.

The distribution of the Renter's Gazette is of critical importance here. Anywhere between twenty-five thousand and fifty thousand copies of the Renter's Gazette are published each week. Campbell Realty then hires individuals, who work in teams of three to four, to deliver the Renter's Gazette to numerous apartment communities located throughout central Indiana. The Renter's Gazette is delivered once each week between Sunday and Thursday. The delivery teams are only supposed to deliver the Renter's Gazette between 6 p.m. and 10 p.m., but tenants have reported that the Renter's Gazette has been delivered after 10 p.m. Individuals do not subscribe to the Renter's Gazette, instead delivery teams leave one copy of the Renter's Gazette at the doorstep of each apartment in the apartment community.

The Apartments brought suit against Campbell Realty alleging that the distribution of the Renter's Gazette constituted a trespass and interference with a business relationship.[2] Each of the apartment communities involved here have signs posted on their property stating that no solicitation or trespassing is permitted, and these rules are strictly enforced. The Apartments indicated that on several occasions they have contacted Campbell Realty and told them to stop entering their properties to deliver the Renter's Gazette. Despite these requests, Campbell Realty's delivery teams have continued to enter the properties. Security personnel at some of the apartment communities have asked the delivery teams to leave the property. Sometimes the delivery teams leave, but sometimes they do not.

Unclaimed issues of the Renter's Gazette create litter on the grounds of the apartment communities. Many of the apartment communities must use all of their maintenance personnel to insure that the litter caused by the Renter's Gazettes is picked up. This often causes the maintenance personnel to neglect their other responsibilities. The litter caused by the unclaimed Renter's Gazettes detracts from an apartment community's "curb appeal." "Curb appeal" apparently relates to the appearance of an apartment community as a prospective tenant drives by the community. The cleaner and more tidy an apart-

2. The Apartments' claim of interference with a business relationship is not at issue here.

ment community appears, the more "curb appeal" it has. Due to their decreased curb appeal, the Apartments contend that prospective tenants are discouraged from renting there.

The information in the Renter's Gazette has caused some of the Apartments' tenants to purchase new homes rather than renew their leases. The Apartments have received complaints from their tenants regarding the Renter's Gazette. Some tenants have complained about the mess caused by issues of the Renter's Gazette. Others have complained that they have been awakened by the delivery of the Renter's Gazette late at night. The Apartments have been unable to quantify their losses attributable to the Renter's Gazette.

The Apartments moved for a preliminary injunction to bar Campbell Realty's delivery teams from entering onto their properties. The trial court denied the Apartments' motion for a preliminary injunction and this appeal ensued.

*Discussion and Decision*

I. Preliminary Injunction

The Apartments first contend that the trial court abused its discretion in denying their motion for a preliminary injunction. We agree.

A. Standard of Review

 The decision whether to grant or deny a preliminary injunction rests within the discretion of the trial court, and the scope of appellate review is limited to deciding whether the trial court has clearly abused its discretion. *Dicen v. New Sesco, Inc.,* 806 N.E.2d 833, 841 (Ind.Ct.App. 2004). "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances or if the trial court misinterprets the law." *Indiana High Sch. Athletic Ass'n Inc., v. Martin,* 731 N.E.2d 1, 5 (Ind.Ct.App.2000), *trans. denied.* When

determining whether or not to grant a preliminary injunction, the trial court is required to make special findings of fact and conclusions of law. *Barlow v. Sipes,* 744 N.E.2d 1, 5 (Ind.Ct.App.2001), *trans. denied* (citing Ind. Trial Rule 52(A)). When findings and conclusions of law are made, the reviewing court must determine if the trial court's findings support the judgment. *Id.* We will reverse the trial court's judgment only when it is clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. *Id.* We will consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment. *Id.*

 The trial court's discretion to grant or deny a preliminary injunction is measured by several factors:

(1) whether the plaintiff's remedies at law are inadequate, thus causing irreparable harm pending the resolution of the substantive action if the injunction does not issue; 2) whether the plaintiff has demonstrated at least a reasonable likelihood of success at trial by establishing a prima facie case; 3) whether the threatened injury to the plaintiff outweighs the threatened harm the grant of the injunction may inflict on the defendant; and 4) whether, by the grant of the preliminary injunction, the public interest would be disserved.

*Id.* The moving party has the burden of showing, by a preponderance of the evidence, that the facts and circumstances entitle him or her to injunctive relief. *Id.* The power to issue a preliminary injunction should be used sparingly, and such relief should not be granted except in rare instances where the law and facts are clearly in the moving party's favor. *Id.*

### B. Reasonable Likelihood of Success at Trial

The trial court found several grounds for denying the Apartments' motion for a preliminary injunction. One of those grounds was its conclusion that the Apartments were not likely to succeed at trial in their trespass claim against Campbell Realty. The trial court made the following relevant conclusions of law:

M. Pursuant to Indiana law, a tenant holds a leasehold in the rented premises. The estate of the landlord during the term of the lease is limited to his reversionary interest, which ripens into perfect title at the expiration of the lease. *Mendenhall et al. v. First New Church Society of Indianapolis,* 177 Ind. 336, 98 N.E. 57, 60 (1912).

N. In accordance with Indiana law, unless otherwise agreed to or specifically reserved, everything which belongs to the demised premises or is used with and is appurtenant to the leased premises, and which is reasonably necessary to the beneficial use and enjoyment thereof, will be considered as incidental to the leased premises and thus a right belonging to the tenant. *Caito v. Indianapolis Produce Terminal, Inc.,* 162 Ind.App. 590, 320 N.E.2d 821, 825 (1974). Receiving information in the form of free newspapers and accepting deliveries at the tenant's leased premises are all reasonably necessary to the beneficial use and enjoyment of leased premises. Absent any provision in the plaintiffs' leases or rules to the contrary, Campbell Realty's activity cannot be prohibited by plaintiffs.

O. The fundament [sic] element of trespass to realty is injury to possession, and right to possession is necessary for the maintenance of the action. *State v. Gibson Circuit Court,* 246 Ind. 446, 206 N.E.2d 135 (1965); *Sigsbee v. Swath-*

*wood,* 419 N.E.2d 789 (Ind.Ct.App.1981). *[The Apartments] thus cannot maintain an action for trespass because a party cannot assert an action for trespass unless the party has exclusive dominion and control over the property alleged to be trespassed upon by [Campbell Realty]. [The Apartments] do not have the common areas of their communities within their exclusive control.*

Appellant's Brief at tab 1 pg. 9–10 (emphasis added). The trial court found that the Apartments did not have exclusive control over the common areas because the tenants were allowed to use these areas.

 The question of whether a landlord must have exclusive possession of the common areas of an apartment community before he or she may sue for trespass to those areas has not been addressed in this state; therefore, we will consider how courts in other states have resolved this or similar issues. Initially, we note that in a trespass claim a plaintiff must prove that "he was in possession of the land and that 'the defendant entered the land without right.'" *Indiana Michigan Power Co. v. Runge,* 717 N.E.2d 216, 227 (Ind.Ct.App. 1999) (quoting *Lever Bros. Co. v. Langdoc,* 655 N.E.2d 577, 581–82 (Ind.Ct.App.1995)). By our own enunciation of the elements of a trespass claim, a plaintiff need only prove that he or she is in possession, rather than exclusive possession, of the land in question to succeed. But we have also abided by the "traditional rule that an action for trespass to real estate 'cannot be maintained for an invasion of a right of way or easement.'" *Runge,* 717 N.E.2d at 227 (quoting *State ex rel. Green v. Gibson Circuit Court,* 246 Ind. 446, 449, 206 N.E.2d 135, 137 (1965)). This traditional rule "'is based upon the principle that trespass actions are possessory actions and that the right interfered with is the plaintiff's right to the exclusive possession of a

chattel or land.' " *Id.* The traditional rule then seems to muddy the waters by suggesting that for a plaintiff to prevail in a trespass claim he or she must prove exclusive possession of the land in question.

We do not need to resolve this ambiguity in the case law as we conclude that the Apartments are in exclusive possession of the common areas. As the Michigan Court of Appeals has explained:

> [t]he landlord grants to tenants rights of exclusive possession to designated portions of the property, but the landlord retains exclusive possession of the common areas. The landlord grants to tenants a license to use the common areas of the property. Tenants pay for this license as part of their rent. Therefore, tenants are invitees of the landlord while in the common areas, because the landlord has received a pecuniary benefit for licensing their presence.

*Stanley v. Town Square Coop.*, 203 Mich. App. 143, 512 N.W.2d 51, 54 (1994).

However, the Washington Supreme Court has taken a position contrary to that of the Michigan Court of Appeals. They have stated:

> Contrary to appellants' assertion, landlords do not have exclusive authority over the common areas. In order to admit visitors to an apartment, the tenant must necessarily possess the authority to permit guests to pass through the common areas leading to that apartment. The tenant must therefore possess the authority to consent to the visitor's entry into the building itself. For

that reason, the authority over common areas is more properly characterized as common to both tenant and landlord, rather than exclusive to the landlord alone.

*City of Seattle v. McCready*, 124 Wash.2d 300, 307, 877 P.2d 686, 690 (1994).

Although we agree that tenants must have the right to permit visitors to pass through the common areas in order to enter their apartment, we believe the Michigan Court of Appeals has satisfactorily dealt with this by giving tenants a license to use the common areas. The Washington Supreme Court's position that landlords and tenants share authority over common areas also leaves us with the same problem caused by the trial court's decision here. If neither the landlord nor the tenant has exclusive control over common areas then no one would be able to maintain an action for trespass to those areas. We believe that for each piece of property there should be at least one individual with a sufficient interest in that property to maintain an action for trespass to it. This would help to protect the property from such things as waste, and also protect the interests of any individuals who happen to be tenants on the property. We therefore hold that a landlord retains exclusive possession of the common areas of an apartment complex and that the trial court has abused its discretion to the extent that it has held otherwise.[3]

 Regardless of whether or not a landlord has exclusive possession over

---

**3.** In his dissent, Judge Baker expresses his concern that by giving landlords the right to exclusive possession of the common areas of an apartment building we are giving landlords the right to bar anyone of their choosing, not just solicitors, from the premises. We disagree. We believe that by giving tenants a license to use the common areas of an apartment building, tenants are sufficiently protect-

ed from this sort of behavior by a landlord. Furthermore, we believe that such behavior by a landlord is not in the landlord's best interest. If landlords suddenly decided to start excluding both invited and uninvited guests from their property, many potential tenants would choose not to live in such a complex and current tenants might choose not to renew their leases.

common areas, we would still conclude that he or she has a sufficient possessory interest in the common areas of an apartment complex to bring an action for trespass. The Apartments correctly note that a landlord has a duty to maintain the common areas or areas under his or her control in a safe condition. *City of Indianapolis Hous. Auth. v. Pippin*, 726 N.E.2d 341, 345 (Ind.Ct.App.2000). Should a landlord breach this duty, he or she could be liable in an action for negligence. The Apartments argue that because a landlord is burdened with this duty and the threat of potential liability, he or she must retain a sufficient possessory interest in the property to maintain an action for trespass.

The Missouri Court of Appeals has reached a similar conclusion. In *Motchan v. STL Cablevision, Inc.*, 796 S.W.2d 896 (Mo.Ct.App.1990), the landlords owned a four-family dwelling that they rented out to tenants. The defendants installed video transmission cables across the property and into the building at the request of one of the tenants. In order to install the cable, the defendants had to drive nails and drill holes into the building. The landlords brought a suit against the defendants for trespass. The defendants moved for summary judgment, arguing that the landlords could not maintain a trespass action because they were not in possession of the property. The trial court granted the defendants' motion for summary judgment. On appeal, the landlords argued that they retained a possessory interest in the common areas that was sufficient to permit them to maintain an action for trespass. The landlords argued that their possessory interest in the common areas was derived from their retention of control over those areas and their duty to repair and keep those areas safe. The Missouri Court of Appeals noted that "[t]he landlord retains, as to the tenants, possession and control of the common areas." *Id.* at 899. The court

also stated that "[w]hen a tenant is in full possession of the premises, the landlord will have no liability for injuries occurring therein, but when the landlord reserves some area for common use, he may be liable." *Id.* The court ultimately held that because landlords retain control over and could be subject to liability for injuries occurring in the common areas, they retain sufficient possession of the common areas to support an action for trespass. *Id.* at 900. We agree with the Missouri Court of Appeals. Because Indiana landlords have a duty to maintain common areas in a safe condition and can be held liable for injuries occurring in those areas, we hold that landlords retain sufficient possession over common areas to maintain an action for trespass. *See Colonial Properties, Inc. v. Vogue Cleaners, Inc.*, 86 F.3d 210, 211 (11th Cir.1996) (concluding that Alabama law is the same as that enunciated by the Missouri Court of Appeals in *Motchan*).

We further conclude that public policy supports allowing landlords to maintain an action for trespass to the common areas of their properties. The United States Supreme Court has stated that "one of the essential sticks in the bundle of property rights is the right to exclude others." *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 82, 100 S.Ct. 2035, 2041, 64 L.Ed.2d 741, 752 (1980). The trial court's denial of the Apartments' motion for a preliminary injunction denies the Apartments their right to exclude trespassers from their property. As with all rights afforded to citizens, our property rights must be closely safeguarded from unwarranted infringements. Here, the denial of the Apartments' property rights is unwarranted.

The Apartments also persuasively argue that the trial court's conclusion will lead to illogical and unjust results. The trial court concluded that the Apartments could

not maintain an action for trespass against Campbell Realty because they were not in exclusive possession of the common areas of their properties. The Apartments, however, note that by their very nature the common areas are used by both the tenants and the landlord in common. Under the trial court's reasoning, neither the landlord nor the tenant would have exclusive possession of the common areas. If no one has exclusive possession, then no one would have the ability to maintain an action for trespass to the common areas. Such a result would mean that businesses like Campbell Realty would have "unfettered access to all apartment communities in Central Indiana." Appellant's Brief at 20. Perhaps of even greater concern, if landlords cannot maintain an action for trespass to the common areas of their properties, then those common areas, like parking lots, sidewalks, laundry rooms, tennis courts, playgrounds, and swimming pools, "would be open to public use without limit or restriction." *Id.* This result is not in the public's best interest, as it would have a deleterious effect on the landlord's business and would interfere with the privacy and repose that tenants expect from what is their home.

We therefore hold that landlords do have a sufficient possessory interest in the common areas of their properties to maintain an action for trespass to those areas. The trial court abused its discretion in concluding that the Apartments did not demonstrate a reasonable likelihood of success at trial on their trespass claim because the Apartments have made a prima facie showing that they are in possession of the common areas of their properties and because Campbell Realty has indisputably entered the Apartments' land without right.[4]

## C. Irreparable Harm

The trial court also denied the Apartments' motion for a preliminary injunction because it found that they had failed to establish an irreparable injury. The trial court found that the Apartments had only shown they would suffer a mere economic injury, which it concluded did not constitute irreparable harm.

At the hearing on the Apartments' motion for a preliminary injunction, the Apartments introduced several pieces of evidence regarding the harm they suffered. The Apartments established that on a weekly basis agents of Campbell Realty were entering their property uninvited to deliver the *Renter's Gazette.* Evidence was introduced that the Apartments had to use all of their grounds personnel and maintenance staff to clean up the mess caused by unclaimed issues of the *Renter's Gazette.* The Apartments testified that the litter caused by the *Renter's Gazettes* diminished their "curb appeal" and, thus, discouraged potential future tenants from living there. Evidence was also presented that some tenants were not renewing their leases and had instead decided to buy a

---

4. We believe it is indisputable that Campbell Realty's delivery teams have entered the Apartments' properties without right and are therefore trespassers. They did not enter any of the apartment communities pursuant to an invitation because no one has subscribed to the *Renter's Gazette,* and the managers of the apartment communities have repeatedly told them not to enter the property. The trial court seems to compare Campbell Realty's delivery teams to other delivery persons like *Indianapolis Star* carriers, pizza delivery persons, or Federal Express drivers. We believe that this is a faulty comparison. Tenants either expressly or impliedly invite onto an apartment community's grounds *Indianapolis Star* carriers, pizza delivery persons, and Federal Express drivers. There is no indication that a tenant has either expressly or impliedly invited Campbell Realty's delivery teams onto the grounds of any of the apartment communities involved here.

new home due to information they had received in the *Renter's Gazette*.

▮▮▮▮ The Apartments have presented sufficient evidence of irreparable harm. Campbell Realty's delivery teams enter the Apartments' properties on a weekly basis. This constitutes a continuing trespass. "A trial court may issue an injunction in order to prevent a continued trespass." *Ballard v. Harman*, 737 N.E.2d 411, 417 (Ind.Ct.App.2000). The Apartments have also introduced evidence that they have suffered economic losses. The trial court and Campbell Realty make much of the fact that the Apartments cannot quantify these losses, but this is not required at this stage of the proceedings. *See Robert's Hair Designers, Inc. v. Pearson*, 780 N.E.2d 858, 865 (Ind.Ct.App. 2002). If the Apartments "could point to a specific dollar amount of losses, then a remedy at law would be sufficient." *Id.* The trial court abused its discretion by denying the Apartments motion for a preliminary injunction because they had failed to establish irreparable harm.[56]

## II. Prior Restraint

▮▮▮▮ The Apartments next argue that the trial court abused its discretion in denying their motion for a preliminary injunction by finding the injunction sought by the Apartments would constitute an impermissible prior restraint. We agree.

▮▮▮▮ We begin by considering whether the injunction sought by the Apartments would violate either the First Amendment to the United States Constitution or Article I, Section 9 of the Indiana Constitution. The First Amendment, made applicable to the States through the Fourteenth Amendment, provides that "Congress shall make no law ... abridging the freedom of speech...." Article I, Section 9 of the Indiana Constitution states that "[n]o law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever." One of the chief purposes of the First Amendment is " 'to prevent previous restraints upon publication.' " *Barlow*, 744 N.E.2d at 9 (quoting *Near v. Minnesota*, 283 U.S. 697, 713, 51 S.Ct. 625, 75 L.Ed. 1357 (1931)). Thus if the injunction sought

5. Judge Baker in his dissent argues that the Apartments have not shown that they have suffered irreparable harm from the distribution of the *Renter's Gazette*. He contends that the litter caused by unclaimed issues of the *Renter's Gazette*, and the loss of business suffered by the Apartments is not sufficient evidence of an irreparable harm. However, Judge Baker ignores the fact the Campbell Realty's agents have been entering the Apartments' properties on a weekly basis for several years. This constitutes a continuing trespass, which alone permits a trial court to to issue an injunction. *See Ballard*, 737 N.E.2d at 417.

6. We have yet to analyze two of the factors that the Apartments must prove to be entitled to a preliminary injunction. One factor concerns whether the grant of a preliminary injunction would be beneficial to the public interest. We briefly touched upon this in section I.B. above. We conclude that the preliminary injunction sought here would be beneficial to the public interest as it would protect property rights and maintain the serenity and privacy of tenants' homes. We also conclude that the threatened injury to the Apartments outweighs the potential injury to Campbell Realty caused by the injunction. The Apartments are injured by Campbell Realty's continued trespasses onto their property. The mess caused by the *Renter's Gazettes* reduces the value and attractiveness of the Apartments' properties and discourages prospective tenants from wanting to live there. The *Renters Gazette* has also caused current tenants to not renew their leases. The preliminary injunction would only bar Campbell Realty from entering onto the Apartments' properties and would not bar them from continuing to publish and distribute the *Renter's Gazette*.

by the Apartments is a prior restraint, we will not consider it a per se violation of the First Amendment, but it will come before us with a heavy presumption that it is constitutionally invalid. *Barlow,* 744 N.E.2d at 9.

■■■■ A prior restraint "describes orders forbidding certain communications that are issued before the communications occur." *Id.* "Restraining orders and injunctions that forbid future speech activities are classic examples of prior restraints." *Mishler v. MAC Sys., Inc.,* 771 N.E.2d 92, 95 (Ind.Ct.App.2002). "The special vice of a prior restraint is that communication is suppressed, either directly or by inducing excessive caution in the speaker, before an adequate determination that it is unprotected by the First Amendment." *Barlow,* 744 N.E.2d at 9. However, the protections that the First Amendment and Article I, Section 9 afford against prior restraints are not triggered unless there is a state action. As Campbell Realty points out, the issuance of a preliminary injunction by the trial court would constitute a state action triggering the protections of both the First Amendment and Article I, Section 9. *Id.* at 10; *Mishler,* 771 N.E.2d at 97.[7]

Although both the First Amendment and Article I, Section 9 are implicated here, we do not believe that the preliminary injunction sought by the Apartments is an impermissible prior restraint. The Apartments have only asked the trial court to enjoin Campbell Realty's agents from trespassing on their private properties. The injunction sought by the Apartments would not bar Campbell Realty from publishing or distributing the *Renter's Gazette.* Campbell Realty would be free to distribute the *Renter's Gazette* to all of the Apartments' tenants through the mail. They could also distribute the *Renter's Gazette* as a free publication at the various news racks located at grocery stores, drug stores, gas stations, restaurants, and along some city streets. Some of the apartment communities indicated that they allow distributors of free publications to leave copies of their publications in the complex's management office where tenants could pick them up if they so desired. With proper approval, copies of the *Renter's Gazette* could be left here as well. Therefore, we hold that the preliminary injunction sought by the Apartments is not an impermissible prior restraint under either the First Amendment or Article I, Section 9 of the Indiana Constitution.[8]

---

7. Campbell Realty also argues that the Apartments' employment of off-duty police officers as security personnel to enforce their no trespassing rules constitutes a state action. We do not reach this argument as we find that the trial court's issuance of a preliminary injunction would constitute a state action.

8. Judge Baker argues that *Mishler* indicates that the issuance of an injunction here would be a prior restraint under both the federal Constitution and the Indiana Constitution. We find *Mishler* distinguishable. In *Mishler,* the plaintiffs were exercising their right to speak on their own private property. Here, Campbell Realty wishes to trespass onto private property to exercise its speech rights. Furthermore, in *Lloyd Corp., Ltd. v. Tanner,* 407 U.S. 551, 568, 92 S.Ct. 2219, 2228, 33

L.Ed.2d 131, 142 (1972), the United States Supreme Court stated that "this Court has never held that a trespasser or an uninvited guest may exercise general rights of free speech on property privately owned and used nondiscriminatorily for private purposes only." The Court further stated that "[i]t would be an unwarranted infringement of property rights to require [the owners of a shopping mall] to yield to the exercise of First Amendment rights under circumstances where adequate alternative avenues of communication exist. Such an accommodation would diminish property rights without significantly enhancing the asserted right of free speech." 407 U.S. at 566, 92 S.Ct. at 2228, 33 L.Ed.2d at 141–42. Here, we find that there is no prior restraint because Campbell

■ The trial court also denied the Apartments' motion for a preliminary injunction because the injunction would interfere with the tenants' right to receive the *Renter's Gazette*. We agree with the trial court that the tenants have a First Amendment right to receive information and ideas. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 757, 96 S.Ct. 1817, 1823, 48 L.Ed.2d 346, 355 (1976) (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 762–63, 92 S.Ct. 2576, 2581, 33 L.Ed.2d 683, 691–92 (1972)). However, we do not believe that the preliminary injunction sought by the Apartments interferes with the tenants' First Amendment rights. Although the preliminary injunction would bar Campbell Realty's delivery teams from trespassing on the Apartments' properties, it would not bar Campbell Realty from publishing and distributing the *Renter's Gazette*. Tenants would be free to obtain a copy of the *Renter's Gazette* at any location where Campbell Realty chooses, and is permitted, to distribute it.

We therefore hold that the injunction would not constitute an impermissible prior restraint, and the trial court abused its discretion by denying the Apartments' motion for a preliminary injunction.

### Conclusion

The trial court abused its discretion in denying the Apartments' motion for a preliminary injunction because landlords do have a sufficient possessory interest in the common areas of their properties to maintain an action for trespass to those areas and because the Apartments have presented sufficient evidence that they will suffer irreparable harm if a preliminary injunction is not granted. We also hold that the preliminary injunction sought by the Apartments will not constitute an impermissible prior restraint under either the First Amendment or Article I, Section 9 of the Indiana Constitution. The trial court's denial of the Apartments' motion for a preliminary injunction is therefore reversed, and we remand the case to the trial court.

Reversed and remanded.

KIRSCH, C.J., concurs.

BAKER, J., dissents with opinion.

BAKER, Judge, dissenting.

I understand that the Apartments find themselves in an aggravating situation—having to dedicate extra employee time to cleaning up the *Renter's Gazette* from its properties, losing tenants who buy a home as a result of information contained in the *Renter's Gazette*, and fearing a loss of prospective tenants who see the littered properties and choose not to rent an apartment. But I believe that granting the requested preliminary injunction gives landlords an unprecedented right to bar whomever they choose from their properties, and I also believe that the injunction violates Campbell Realty's and the tenants' rights under the First Amendment to the United States Constitution and Article I, Section 9 of the Indiana Constitution. Therefore, I respectfully dissent from the majority opinion.

### I. Trespass

The majority concludes that a landlord has the right to exclusive possession of the common areas of its apartment building such that it may bring an action for trespass. It further concludes that while a tenant has the right to exclusive possession of her apartment, she has only a license to use the common areas of her apartment building, and is an invitee of the landlord while in the common areas. I

Realty has ample adequate alternative avenues for it to distribute the *Renter's Gazette*.

agree that a landlord has a possessory interest in common areas to the extent that needs to repair and maintain them, *see City of Indianapolis Hous. Auth. v. Pippin,* 726 N.E.2d 341, 345 (Ind.Ct.App. 2000), but I respectfully disagree that its interest goes any farther than that.

To hold that a landlord has the right to exclusive possession of the common areas of an apartment building is tantamount to the notion that a landlord has the right to bar anyone of its choosing—not just solicitors—from the premises. While a tenant may agree to such a condition if it is included in her lease, I believe it is unwise for the judiciary to read that condition into a contract—especially where, as here, the already-executed lease governing the landlord-tenant relationship contains no such provision.

Although the Apartments and the majority opinion attempt to distinguish between invited guests—such as *The Indianapolis Star* and food delivery people—and non-invited guests—such as the *Renter's Gazette* delivery people—giving landlords the right to exclusive possession of common areas means that they may bar whomever they choose from the premises—including friends and other guests of tenants. Moreover, even if I accept the distinction between invitees and non-invitees for argument's sake, there is evidence in the record that not only did some tenants have no objection to the delivery of the *Renter's Gazette,* they even decided to purchase a new home based on the information contained therein. Appellant's App. p. 17. Indeed, this loss of business is inarguably a significant—and troublingly content-based—component of the Apartments' problem with the newspaper. I respectfully disagree with the majority's holding that landlords have the right to exclusive possession of common areas, therefore, because I believe that this hold-ing will have far-reaching and unintended implications for the landlord-tenant relationship.

## II. Irreparable Harm

I also disagree with the conclusion that the Apartments have shown irreparable harm as a result of the distribution of the *Renter's Gazette.* There are two ways in which the Apartments attempt to show irreparable harm. The first, concerning litter from the *Renter's Gazette* blowing around the Apartments' properties, does not qualify for a preliminary injunction because money damages would suffice to remedy this harm. The second, involving a loss of business as a result of the decision of certain tenants to buy a home after reading the *Renter's Gazette,* is a content-based argument that causes the injunction to violate the United States and Indiana Constitutions.

### A. Litter

The Apartments introduced evidence of added clean-up costs, unsightly appearance, and security concerns caused by unclaimed issues of the *Renter's Gazette.* I agree that this evidence shows that the Apartments have been harmed by the distribution of the *Renter's Gazette,* but I disagree that it shows irreparable harm such that an injunction is appropriate relief. Initially, the record does not appear to reveal whether the *Renter's Gazette* is the only printed material that blows around and leaves litter on the premises. It may be that the Apartments have similar problems with other printed material, such as *The Indianapolis Star* and *USA Today.* Moreover, it would not be difficult to quantify the number of employees, the number of hours, and the salary per hour of each employee, which is regularly required to clean up the *Renter's Gazette* litter. Because it is quantifiable, money damages are adequate, and an injunction is inappropriate.

## B. First Amendment

The Apartments also argue that they may keep the *Renter's Gazette* from their tenants because it has damaged the Apartments' business. To wit, the Apartments point to the loss of long-time tenants who decided to buy a home after reading the *Renter's Gazette,* Appellant's Br. p. 7, and to some of the content in the *Renter's Gazette* that is "calculated to cause residents to look unfavorably on the apartment communities and their management." *Id.* p. 4. The majority agrees, highlighting evidence that "some tenants were not renewing their leases and had instead decided to buy a new home due to information they had received in the *Renter's Gazette.*" Slip op. p. 14. Based on this argument, I believe that the injunction violates the First Amendment to the United States Constitution and Article I, Section 9 of the Indiana Constitution. *See Mishler v. MAC Sys., Inc.,* 771 N.E.2d 92, 97 (Ind.Ct. App.2002) (holding that trial court's issuance of an injunction is state action sufficient to implicate Article I, Section 9); *Barlow v. Sipes,* 744 N.E.2d 1, 10 (Ind.Ct. App.2001) (same, with respect to First Amendment of U.S. Constitution).

In my opinion, enjoining the distribution of the *Renter's Gazette* is an impermissible prior restraint. While the Apartments point to *Mishler* as support for their argument that because Campbell Realty could have distributed the *Renter's Gazette* in other ways and in other places an injunction would not be a prior restraint, in fact *Mishler* stands for the opposite conclusion. The *Mishler* court noted that the injunction in that case was an impermissible prior restraint because the plaintiffs were "prevented from exercising their state constitutional right to speak 'on any subject whatever' *by the means they deemed most appropriate* . . . ." 771 N.E.2d at 98 (emphasis added). The Mishlers could have shared their opinion by writing a letter to the editor, creating and mailing a newsletter to people in the community, or organizing a protest, but because the injunction prevented them from sharing their opinion by the means they deemed most appropriate—via a sign in their yard—it was an impermissible prior restraint.

Similarly, while it is true, as pointed out by the majority, that Campbell Realty would be free to distribute the *Renter's Gazette* in other venues such as "grocery stores, drug stores, gas stations, restaurants, and along some city streets," slip op. p. 16, that does not change the fact that Campbell Realty has the right to express itself by the means it deems most appropriate, which appears to be distribution directly to the Apartments' tenants. An injunction preventing Campbell Realty from doing so amounts to an impermissible prior restraint.

Moreover, as acknowledged by the majority, the tenants have a right, pursuant to the First Amendment, to receive information and ideas. Op. at p. 170. I disagree with the majority's conclusion that because Campbell Realty could still publish and distribute the *Renter's Gazette* in other locations, the preliminary injunction would not interfere with this right. Indeed, a preliminary injunction barring the distribution of the *Renter's Gazette* directly to the tenants because the Apartments are troubled by its content is a fundamental and impermissible violation of the tenants' right to receive that information, and I believe that it violates the First Amendment and Article I, Section 9.

Therefore, I would affirm the trial court's denial of the preliminary injunction.