Eric D. SMITH, Appellant–Plaintiff,

v.

INDIANA DEPARTMENT OF CORRECTION and Westville Control Unit, Appellees–Defendants.

No. 49A02–0602–CV–99.

Court of Appeals of Indiana.

Feb. 28, 2007.

Eric D. Smith, Westville, IN, Appellant pro se.

Steve Carter, Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

FRIEDLANDER, Judge.

Eric D. Smith, pro se, an inmate currently incarcerated at Pendleton Correctional Facility, appeals the denial of his motion for preliminary injunction, challenging that ruling as the sole issue on appeal.

We affirm.

The facts are that on August 11, 2005, Smith filed a complaint alleging that the Indiana Department of Corrections

(IDOC) violated his rights under the Indiana Constitution. The situation prompting Smith's complaint was the fact that he was at that time housed in a punitive disciplinary segregation unit at the Westville Control Unit. Smith alleged that the conditions under which he lived in that setting constituted mental and physical abuse. He specifically cited the following examples: (1) He was forced to remain in his cell for twenty-three or twenty-four hours per day, unreasonably restricting his opportunity for physical exercise; (2) "only providing ... three (3) pair of socks, tee-shirts and boxer underwear when laundry is only done once a week, and recreation is run five-seven times a week, causing [Smith] fungal problems such as ringworm, and to avoid recreation because he has no clean ... laundry to change into," *Appellant's Appendix* at 14; (3) not permitting Smith to watch television or listen to the radio; (4) not permitting Smith to possess hardback books or CD players, thus denying him the ability to educate and rehabilitate himself; and (5) "[n]ot providing him with adequate access to someone trained in the law, in order to manipulate his legal endeavors and the dissuade him for [sic] pursuing legal activities." *Id.* at 15. On September 16, 2005, Smith filed a motion for preliminary injunction seeking transfer to a general housing unit. After the State filed a motion opposing the request for injunctive relief, the trial court held a hearing on November 23, 2005, after which it denied Smith's motion. On December 23, 2005, Smith filed a motion asking the court to reconsider its denial of his request for a preliminary injunction. Smith appeals the denial of his motion to reconsider.

We have set out the standard of review relative to rulings on motions for preliminary injunction as follows:

The decision whether to grant or deny a preliminary injunction rests within the discretion of the trial court, and the scope of appellate review is limited to deciding whether the trial court has clearly abused its discretion. "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances or if the trial court misinterprets the law." *Indiana High Sch. Athletic Ass'n Inc., v. Martin,* 731 N.E.2d 1, 5 (Ind.Ct.App.2000), *trans. denied.* When determining whether or not to grant a preliminary injunction, the trial court is required to make special findings of fact and conclusions of law. When findings and conclusions of law are made, the reviewing court must determine if the trial court's findings support the judgment. We will reverse the trial court's judgment only when it is clearly erroneous. Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. We will consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment.

*Aberdeen Apartments v. Cary Campbell Realty Alliance, Inc.,* 820 N.E.2d 158, 163 (Ind.Ct.App.2005) (some internal citations omitted), *trans. denied.* The trial court focuses upon several factors in ruling on a request for preliminary injunction. Those include:

(1) whether the plaintiff's remedies at law are inadequate, thus causing irreparable harm pending the resolution of the substantive action if the injunction does not issue; 2) whether the plaintiff has demonstrated at least a reasonable likelihood of success at trial by establishing a prima facie case; 3) whether the threatened injury to the plaintiff outweighs the threatened harm the grant of

the injunction may inflict on the defendant; and 4) whether, by the grant of the preliminary injunction, the public interest would be disserved. *Id.* In this case, Smith bears the burden of demonstrating, by a preponderance of the evidence, that the facts and circumstances entitle him to injunctive relief. *Aberdeen Apartments v. Cary Campbell Realty Alliance, Inc.*, 820 N.E.2d 158. In considering such motions, courts are aware that the power to issue a preliminary injunction should be used sparingly, and a preliminary injunction should be granted only in those rare instances where the law and facts are clearly in the moving party's favor. *Id.*

■ We note at the outset that Smith's challenge might arguably be regarded as a challenge to the decision to confine him in the punitive disciplinary segregation unit. If indeed this appeal amounted only to a challenge to that decision, neither the trial court nor this court would have jurisdiction over the subject matter. *See Blanck v. Ind. Dep't of Corr.*, 829 N.E.2d 505, 510 (Ind. 2005) ("none of the prison discipline statutes ... confer subject matter jurisdiction over claims challenging judicial review of prison disciplinary decisions"). We conclude, however, that a generous reading of Smith's arguments permits a conclusion that his argument implicates generally the conditions of living in the punitive disciplinary segregation unit rather than the fact that Smith was sent there in the first place. We reiterate, however, that to the extent he merely seeks reassignment to the general population rather than a declaration that the living conditions of the punitive disciplinary segregation unit are unconstitutional, we are without jurisdiction to consider that matter.

■ It was incumbent upon Smith to prove by a preponderance of the evidence that, among other things, his remedies at law were inadequate and that irreparable harm would result from the denial of the motion. We begin with his assertion that confinement in the punitive disciplinary segregation unit has caused him mental and physical harm. We can find no allegations about specific actions that resulted in physical harm. Instead, Smith asserts the unsubstantiated and general claim that he has been the victim of abusive treatment at the hands of IDOC personnel.[1]

IDOC correctly notes that there is a legal remedy for Smith, and, further, that he has availed himself of that remedy by filing the lawsuit from which the instant petition for a preliminary injunction springs. Smith characterizes IDOC's assertions, including the claim that there exists an adequate remedy at law, as "naked legal arguments." *Appellant's Brief* at 18. We assume by this Smith means to assert that IDOC's arguments amount to nothing more than assertions unsupported by evidence or legal argument. Smith is incorrect. Moreover, the irony is not lost on this court that Smith

---

1. We are aware that there are copies in the appellate materials of photos taken of Smith that depict injuries Smith claims were inflicted by IDOC personnel. Under the circumstances of this case, the trial court was evidently not convinced that Smith sustained those injuries in the manner he claimed. There is a basis for the trial court's skepticism. We note, for instance, that *Appellant's Appendix* reflects that Smith admitted he was guilty of at least twenty-five of the unexplained incidents in which he received conduct reports. He claims those actions on his part were driven by the anger he felt at such diverse things as losing his house, job, fiancée, and military career, having to arise at 3:30 a.m. to work in the prison kitchen, and the fact that he was going bald. After being placed in segregated housing he was also found guilty of having a knife hidden in his cell.

counters IDOC's arguments in this regard with what amounts to unsupported, conclusory assertions of his own. His was the burden to prove by a preponderance of the evidence that he had no adequate remedy at law. He claimed that he does not, but supported that claim only by arguing that without a preliminary injunction (i.e., a move to the general prison population) he will suffer the irreparable harm of "being victim to [sic] excessive force upon [sic] guards." *Id.* The trial court obviously was not convinced of the veracity of that claim, and we cannot say that determination was clearly erroneous. *See Aberdeen Apartments v. Cary Campbell Realty Alliance, Inc.*, 820 N.E.2d 158.

The remaining claim of harm seems to be that the current conditions of his incarceration hamper his ability to redress his grievances and press his legal claims. As Smith puts it, IDOC's policies are intended to "manipulate [Smith's] legal endeavors and dissuade him for [sic] pursuing legal activities." *Id.* at 5. Even assuming for the sake of argument that is true, those tactics are notable failures. Smith has initiated at least fourteen appeals in this court since October 2005,[2] and each appeal is attended by a seemingly endless stream of ancillary motions and petitions. In short, it would appear that IDOC's policies do not impede Smith's prodigious legal endeavors. Smith did not prove this element of his claim by a preponderance of the evidence.

Smith also failed to carry his burden of proving that the granting of his motion would serve the public interest. To the contrary, granting his request and returning him to the general population would have negated the consequences of his twenty-five admitted disciplinary violations. It may be presumed that such consequences play an important role in maintaining order in prison populations. To remove the disincentives for violating the rules of penal facilities clearly would not serve the public interest.

■ Having determined that Smith failed to carry his burden with respect to three of the four factors considered in deciding whether to grant a preliminary injunction, and considering the purpose of a preliminary injunction, we need not consider the likelihood of Smith prevailing on his underlying claims at trial. The foregoing analysis provides sufficient grounds to affirm the denial of Smith's request for a preliminary injunction.[3]

Judgment affirmed.

KIRSCH, C.J., and RILEY, J., concur.

---

2. *See Smith v. McKee, et al.*, 850 N.E.2d 471 (Ind.App.2006); *Smith v. Maximum Control Facility et al.*, 850 N.E.2d 476 (Ind.App.2006); *Smith v. Huckins et al.*, 850 N.E.2d 480 (Ind.App.2006); *Smith v. Indiana Dep't of Corr. et al.*, 853 N.E.2d 127 (Ind.App.2006); *Smith v. Wal–Mart*, 853 N.E.2d 478 (Ind.App.2006); *Smith v. Carrasco & Miller*, 850 N.E.2d 468 (Ind.App.2006); *Smith v. Indiana Dep't of Corr. & WCU*, App. No. 49A02–0602–CV–99; *Smith v. Dep't of Corr. et al.*, App. No. 49A05–0603–CV–113, 853 N.E.2d 551 (Ind.App. 2006); *Smith v. Indiana Dep't of Corr. et al.*, App. No. 49A02–0603–CV–211; *Smith v. Harris*, 861 N.E.2d 384 (Ind.App.2007); *Smith v. Payne, et al.*, App. No. 46A03–0607–CV–327; *Smith v. Indiana*, App. No. 41A04–0608–CV–441; *Smith v. IDOC et al.*, App. No. 49A04–0608–CV–469.

3. We summarily reject Smith's claim that the denial of his request violated Article 1, sections 11 and 23 of the Indiana State Constitution's Bill of Rights. The crux of his argument on this point is that his "burial and Holding in super-maximum segregation does

not have any inherent characteristics which 'rationally distinguish' him from other prisoners not subjected to this significant confinement." *Appellant's Brief* at 34–35 (internal quotation unattributed). The flaw in Smith's reasoning is the fact that his confinement is not arbitrary, but is attributable to his numerous—and admitted—disciplinary violations.