WASHINGTON COUNTY HEALTH
DEPARTMENT and Mike
Haddon, Appellants,

v.

Jeff and Robin WHITE, Appellees.

No. 88A04–0703–CV–126.

Court of Appeals of Indiana.

Dec. 10, 2007.

Rehearing Denied Jan. 31, 2008.

Thomas E. Scifres, Daniel L. Brown, Salem, IN, Attorneys for Appellants.

Dale W. Arnett, Winchester, IN, Attorney for Appellees.

## OPINION

HOFFMAN, Senior Judge.

Respondents/Counterclaimants–Appellants Washington County Health Department and Mike Haddon (collectively "WCHD") appeal the trial court's denial of their Counterclaim for Injunctive Relief against Petitioners/Counterclaim Respondents–Appellees Jeff and Robin White (collectively "the Whites"). We reverse and remand.

WCHD raises two issues, which we consolidate and restate as whether the trial court abused its discretion by denying WCHD's Counterclaim for Injunctive Relief.

In July of 2006, Mike Haddon, a Washington County Health Officer and employee of WCHD, noticed that two mobile homes had been placed on property owned by the Whites that is located in an unincorporated portion of Washington County. Haddon could see that people were living in the mobile homes and that there was a discharge pipe extending from the bottom of one of the mobile homes to the ground. As an employee of WCHD, Haddon knew that a permit for a septic system had not been obtained for either of the mobile homes. Haddon went onto the property and spoke with the Whites' son, Kelly White ("Kelly"). Haddon asked Kelly if he could look at the end of the discharge pipe, and Kelly told him no. Kelly then told Haddon to leave the property, which he did.

On July 26, 2006, Haddon sent the Whites a letter stating that the WCHD, pursuant to Indiana Code § 16–20–1–23 and 410 Indiana Administrative Code 6–8.1–33, wanted to inspect their property "for conditions that transmit, generate, or promote disease. . . ." Appellant's Appendix at 8. In the letter, Haddon stated that he had observed a discharge pipe extending "from one trailer to the ground surface. . . ." *Id.* By a letter dated August 2, 2006, the Whites informed Haddon that they refused to allow WCHD to inspect their property.

Thereafter, on August 3, 2006, the Whites filed a petition for injunctive relief, in which they requested that WCHD not be allowed on their property without a valid search warrant. The Whites also argued that pursuant to Indiana Code § 36–7–8–3(d) and our decision in *Robinson v. Monroe County*, 658 N.E.2d 647 (Ind.Ct.App.1995), *trans. denied*, they were not required to obtain any sort of permit for their mobile homes.

Haddon then sent a Notice and Order to Comply letter to the Whites on August 4, 2006. In the letter, Haddon stated that the Whites had committed three health code violations. The first violation was of Indiana Code § 16–20–1–25(a), which provides, "A person shall not institute, permit, or maintain any conditions that may transmit, generate, or promote disease." The second violation was of 410 IAC 6–8.1–33, which in relevant part states:

(a) The owner or agent of the owner shall obtain a written permit signed by the health officer, for construction of a residential sewage disposal system prior to:

(1) Construction of a residence or placement of a mobile home which will not be connected to a sanitary sewerage system.

Haddon last alleged that the Whites violated 410 IAC 6–8.1–31(a), which states:

No person shall throw, run, drain, seep, or otherwise dispose into any of the surface waters or ground waters of this state, or cause, permit, or suffer to be thrown, run, drained, allowed to seep, or otherwise disposed into such water, any organic or inorganic matter from a

dwelling or residential sewage disposal system that would cause or contribute to a health hazard or water pollution.

The Whites were given fifteen days to correct the violations.

WCHD filed a response to the Whites' petition for injunctive relief and a Trial Rule 12(b)(6) motion to dismiss on August 30, 2006.[1] That same day, WCHD also filed a counterclaim for injunctive relief. WCHD alleged that, despite receiving notice on August 4, 2006, the Whites had not corrected the possible sewage disposal problem on their property. Because of this, WCHD requested that the Whites "be enjoined from the use of plumbing and public water without the installation of a properly inspected sewage disposal system or septic system." Appellant's App. at 15.[2]

The trial court held a hearing on November 29, 2006, at which both Haddon and Jeff White testified. The trial court issued an order on January 4, 2007, denying both the Whites' and WCHD's petitions for injunctive relief. In denying WCHD's petition for injunctive relief, the trial court found as follows:

2. Washington County seeks to enjoin White from constructing on their realty and from using a sewage disposal system. Washington County set forth that prior to the construction of a residential sewage disposal system, a written permit is required under both the provisions of the Washington County Health Code Article 4 § 4 and 410 IAC 6–8.1–33 of the Indiana Administrative Code, both of these adopted under the authority of the Health Code contained in title 16 of the Indiana Code. White cites the Court to IC 36–7–8–3(d) part of the Building Code of the Indiana Codes [sic], which sets forth that County ordinances adopted with respect to 'sanitation standards' does not apply to private homes built by themselves and used for their occupancy. The Court finds that the trailer and any sewage disposal system attached thereto of the Whites in this case is a home built by them and is occupied as their residence. Analysis of the statutes in question would appeared [sic] to show that the intent of the Health Statutes is to authorize action to remediate an actual or imminent specific and particular risk of disease. There is no showing in this action that the condition of White's property poses a danger to the health of either White or any other person. Whereas the building Code is intended to authorize counties to establish some standards for construction in unincorporated areas of the County, residences constructed by a [sic] owner/dweller are exempt from the prior permit provision. (see *Noble County Board of Commissioners v. Fahlsing*, 714 N.E.2d 1134 (1999)). In comparing these two Statutes it is the better conclusion that the Health Statute will not support a permit requirement, as such the requiring of a permit entails only the prevention of a speculative future act rather than an imminent or even demonstrated risk to health, and

---

1. WCHD's Trial Rule 12(b)(6) motion to dismiss has not been raised as an issue here.

2. In September of 2006, the Whites filed an answer to WCHD's Counterclaim for Injunctive Relief. In their answer, the Whites argued that Indiana Code § 16–20–1–25(b) violated the Fifth and Fourteenth Amendments of the United States Constitution and Article 1, Section 12 of the Indiana Constitution. WCHD filed a motion to dismiss with regard to this issue on November 22, 2006. In its final order, the trial court did not reach this issue, and neither party has raised this question on appeal.

to conclude that a permit could be required would make an annuity [sic] of the exception granted to owner/dweller granted under the Building Statute. The Court, therefore, finds that Washington County is not entitled to an injunction enjoining White from constructing a sewage disposal system on the property in question, as such Washington County's request for an injunction is denied.

Appellant's App. at 21–22. This appeal ensued.

■■■ WCHD contends that the trial court abused its discretion when it denied WCHD's petition for injunctive relief. "The decision whether to grant or deny a preliminary injunction rests within the discretion of the trial court, and the scope of appellate review is limited to deciding whether the trial court has clearly abused its discretion." *Aberdeen Apartments v. Cary Campbell Realty Alliance, Inc.*, 820 N.E.2d 158, 163 (Ind.Ct.App.2005), *trans. denied.* An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances or if the trial court misinterprets the law. *Id.* In deciding whether to grant a preliminary injunction, a trial court is required to make special findings of fact and conclusions of law. *Id.* When a trial court makes findings and conclusions of law, we must determine whether the trial court's findings support the judgment. *Id.* We will only reverse the trial court's judgment if it is clearly erroneous. *Id.* "Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them." *Id.* We consider the evidence in the light most favorable to the judgment and will construe findings together liberally in favor of the judgment. *Id.*

■■■ WCHD argues that the trial court erred when it concluded that the Whites fell under the exception created by Indiana Code § 36–7–8–3(d) ("Subsection (d)"). Indiana Code § 36–7–8–3 states:

(a) The legislative body of a county having a county department of buildings or joint city-county building department may, by ordinance, adopt building, heating, ventilating, air conditioning, electrical, plumbing, and sanitation standards for unincorporated areas of the county. These standards take effect only on the legislative body's receipt of written approval from the fire prevention and building safety commission.

(b) An ordinance adopted under this section must be based on occupancy, and it applies to:

(1) the construction, alteration, equipment, use, occupancy, location and maintenance of buildings, structures, and appurtenances that are on land or over water and are:

(A) erected after the ordinance takes effect; and

(B) if expressly provided by the ordinance, existing when the ordinance takes effect;

(2) conversions of buildings and structures, or parts of them, from one occupancy classification to another; and

(3) the movement or demolition of buildings, structures, and equipment for the operation of buildings and structures.

(c) The rules of the fire prevention and building safety commission are the minimum standards upon which ordinances adopted under this section must be based.

(d) An ordinance adopted under this section does not apply to private

homes that are built by individuals and used for their own occupancy.

Indiana Code § 36–7–8–3 authorizes the legislative body of a county to promulgate a building code for unincorporated areas of the county. The building code establishes construction specifications, requires permits, and provides for inspections of construction projects. However, pursuant to Subsection (d), an individual may be exempted from the provisions of any promulgated building code if he has built his own home for his own occupancy.

 WCHD specifically contends that the Subsection (d) exception does not apply here because the Whites did not build the mobile homes placed on the property. At issue is the meaning of the word "built." "The interpretation of a statute is a question of law reserved for the courts." *Scott v. Irmeger*, 859 N.E.2d 1238, 1239 (Ind.Ct.App.2007). Our primary goal in statutory interpretation is to determine, give effect to, and implement the intent of the legislature. *Id.* "The best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless indicated by statute." *Id.*

The common meaning of the term "build" is "to form by ordering and uniting materials by gradual means into a composite whole." Merriam–Webster OnLine Dictionary, *http://www.merriam-webster.com/dictionary/build* (last visited Nov. 8, 2007). The parties do not dispute that the homes placed on the Whites' property were mobile homes. By its very nature, a mobile home is a type of structure that is not built by its ultimate owner/occupant, but by the company that manufactured the mobile home. There is no evidence here that the Whites gathered together and united various materials in order to construct the mobile homes that were placed on their property.

However, the Whites point out that additional construction is required when, as was the case here, a mobile home is moved from one location to another. They note that a concrete pad or foundation for the mobile home must be poured, plumbing and electricity must be hooked up, and repairs to the mobile home must be made.

In *Robinson*, we concluded that the Subsection (d) exception applied "to private individuals who themselves, or with the assistance of unpaid non-professionals, perform a substantial amount of the construction work on a house." 658 N.E.2d at 652. We noted that Robinson had done the following work on his home: "all of the framing and roofing, the finish and cabinet work, the electrical work, and the plumbing." *Id.* at 651. Based on this, we held that Robinson had done a substantial amount of the construction work on his house, and that the Subsection (d) exception applied. *Id.* The Whites seem to contend that if a concrete pad or foundation is poured, electricity or plumbing is hooked up, or repairs are made to a mobile home, these activities would constitute a substantial amount of the construction work on a house, and thus, the Subsection (d) exception should apply. We need not reach this question, though, as there is simply no evidence in the record suggesting that the Whites performed any of these activities when the mobile homes were moved onto their property. Therefore, we conclude that the Whites did not build the mobile homes placed on their property, and because of this, the Subsection (d) exception does not apply here.

 In a way, the question whether the Subsection (d) exception applies is a sidetrack to the fundamental issue here, which is whether the Whites must comply with the requirements of Indiana's Health Code ("Health Code") contained in Title 16 of the Indiana Code. We have already deter-

mined that the Whites do not fall within the Subsection (d) exception, and because of this, we conclude that they are bound to comply with the Health Code regulations, specifically, 410 IAC 6–8.1–33, which required them to obtain a permit for a sewage disposal system prior to placing the mobile homes on their property. As such, the trial court abused its discretion by denying WCHD's petition for injunctive relief.

However, even if we had determined that the Whites satisfied the Subsection (d) exception, they still would have been required to comply with the Health Code regulations. The trial court took a contrary position. It viewed the Subsection (d) exception as a global exception that exempts individuals not only from the requirements set out in Indiana Code § 36–7–8–3, but also the requirements of the Health Code. The trial court's view of the scope of the Subsection (d) exception is too broad.

In *Robinson,* we noted that

Subsection (d) represents an exception to the safety-oriented requirements set forth elsewhere in the statute [Indiana Code § 36–7–8–3] and thus is contrary to the purpose of the statute. That is, exempting an individual from the requirements of obtaining authorization for proposed construction and subjecting the completed work to inspection and approval prior to permitting occupancy of the building runs contrary to the goal of ensuring safe buildings.

658 N.E.2d at 650–51. In questioning why the Subsection (d) exception was created, we pointed out that

[i]n its early stages, this country's frontier was moved westward by pioneers who moved onto land and built houses made from the materials at hand. Since then, home owning has become an essential facet of the "American dream".

It may be argued that ordinances such as those contemplated by IC 36–7–8–3, which establishes construction specifications and require permits and inspections for residential construction projects, interfere with the ability of some individuals to build their own home and thus to pursue the American dream.

*Id.* at 651. We determined that

exempting a person who wishes to build his own house from the requirements imposed pursuant to IC 36–7–8–3 of complying with construction specifications and obtaining permits allows that person to build a house even though he may not possess the skills or equipment to comply with technical specifications, and allows him to do so even if he is not able to afford to pay others to do the work.

*Id.* Nevertheless, we concluded that the Subsection (d) exception "only creates an exemption from the requirements set out in [Indiana Code § 36–7–8–3] and does not provide a similar exemption from the requirements set out in [Indiana Code § 36–7–8–4] concerning minimum housing standards and related ordinances." *Id.* at 652.

We agree with the *Robinson* court's conclusion that the Subsection (d) exception is a limited exception only exempting an individual from the requirements of Indiana Code § 36–7–8–3. The Health Code and Indiana Code § 36–7–8–3 regulate different subject matters. The reasons discussed in *Robinson* for exempting an individual from the requirements of Indiana Code § 36–7–8–3 do not apply with regard to exempting an individual from the requirements of the Health Code. The trial court erred in concluding that an individual who satisfies the Subsection (d) exception is exempt from the Health Code requirements. The Whites were required to obtain a permit for a sewage disposal system prior to placing the mobile homes on

their property. *See* 410 IAC 6–8.1–33(a)(1). Therefore, the trial court abused its discretion when it denied WCHD's petition for injunctive relief. We remand this case to the trial court for action consistent with this opinion.

Reversed and remanded.

BAKER, C.J., and RILEY, J., concur.